GILLRING OIL COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

No. 77-1664.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1978.

J. Evans Attwell, Judy M. Johnson, Houston, Tex., for petitioner.

Allan A. Tuttle, Sol., Steven A. Taube, Atty., Drexel D. Journey, Gen. Counsel, Federal Power Commission, Washington, D. C., for respondent.

Before BROWN, Chief Judge, and GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

In 1971, Federal Power Commission Opinion No. 595 established ceiling prices for the sale of natural gas in the Texas Gulf Coast Area for each year back to 1959. The Commission ordered Gillring Oil Company, which had charged prices in excess of those ceilings during 1960–1968, to refund the excess. Gillring brought a declaratory action seeking to offset the refund by the extent to which the rates it charged during 1959–60 and 1968–1971 were below the al-

lowable ceiling. The Commission denied Gillring's request, and this review proceeding followed. Deferring to the Commission's reasonable construction of Opinion 595, and to its discretion in considering the equities of a refund order, we affirm the Commission's decision.

## Area Rates

Opinions No. 595, 45 F.P.C. 674 (1971), and No. 595–A, 46 F.P.C. 827 (1971), affirmed, *Public Service Commission v. FPC,* 170 U.S.App.D.C. 153, 516 F.2d 746 (1975), had their genesis in the Supreme Court's landmark decision, *Phillips Petroleum Co. v. Wisconsin,* 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954). In that case the Court, by finding that the Commission had a statutory duty to regulate the rates of some 3,000 independent producers of natural gas, thrust on the Commission a task it was then unequipped to handle. *See Permian Basin Area Rate Cases,* 390 U.S. 747, 756–758, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). To expedite its docket, the Commission largely abandoned individual ratemaking, and began setting prices according to geographical areas. In 1968, the Supreme Court upheld the first area rate case to reach it. *Permian, supra.*

The contract involved in this dispute came into existence in 1948. After the *Phillips* decision, Gillring filed the contract as a rate schedule under § 4 of the Act, now 15 U.S.C.A. § 717c (1976). In 1959, the contract rates went into effect under § 4(e) subject to refund if the Commission should eventually find they were above the just and reasonable price. Gillring's contract then became part of the Texas Gulf Coast Area rate proceeding, which the Commission completed in 1971 by issuing Opinions No. 595 and 595–A. The D.C. Circuit affirmed them in 1975.

Two aspects of Opinion No. 595 are particularly important to an understanding of Gillring's claim in this case.

■ First, by examining average costs of production and making an allowance for a reasonable return to investors, the Commission set ceilings on the prices producers could charge for gas in the area. For Gillring the applicable ceiling prices were 15 cents/mcf from 1959–1964, 17 cents/mcf from 1965–1967, and 19 cents/mcf from 1968–1971. Although in regulatory argot these prices are often referred to as the just and reasonable "rates," it is necessary to realize that "rate" is only "a term used, for convenience, to identify the ceilings put on producers." *Public Service Commission v. FPC,* 159 U.S.App.D.C. 172, 179, 487 F.2d 1043, 1051 (1973), *judgment vacated on other grounds,* 417 U.S. 964, 94 S.Ct. 3167, 41 L.Ed.2d 1136 (1974). The Commission's decision to set only a ceiling on price is grounded in the assumption that the bargain originally thought fair by the parties should not be disturbed unless harmful to consumers. As the Supreme Court emphasized in *Permian* :

> The regulatory system created by the Act is premised on contractual agreements voluntarily devised by the regulated companies; it contemplates abrogation of agreements only in circumstances of unequivocal public necessity.

390 U.S. at 822, 88 S.Ct. at 1388. While in some circumstances the Commission has aided producers by including a minimum, or "floor" rate in an area order, *see, e. g., Permian,* 390 U.S. at 821, 88 S.Ct. 1344, it did not do so in Opinion No. 595.

Second, the Commission held that producers who had charged in excess of the ceiling rates must pay refunds, unless they "worked off" those obligations by new dedications of gas to the interstate market by January 1, 1976. *Cf. Mobil Oil Corp. v. FPC,* 417 U.S. 283, 299 n.18, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974) (describing similar work off provision in another area rate). The language providing the basis for computing refunds is the subject of dispute. The opinion's ordering paragraphs said:

> (B) . . . [W]ith respect to the rates involved in Section 4(e) proceedings . . ., the applicable area rate as defined in paragraph (A) above shall be effective from the date such Section 4(e) rates were collected subject to refund and *all amounts collected*

under those Section 4(e) rates prior to August 1, 1971 *in excess of the applicable area rate shall be subject to refund,* plus interest at the rate specified in the respective Section 4(e) proceedings, in accordance with provisions of ordering paragraphs (D) and (E) herein; . . . .

. . . . .

(E) Refund Reports. . . . The report shall set forth the following information . . . :

. . . . .

(iii) The *difference between the total amount collected* during the period subject to refund *and the amount that would have been collected at the applicable area rate as defined herein* subject to the proviso of ordering paragraph (B).

45 F.P.C. at 720–722 (emphasis added).

Gillring, in its contract, had agreed to a price of 11.9 cents/mcf during 1959–1960, 14.8 cents/mcf during 1960, and 17.0 cents/mcf from 1960–1971. Those prices were below the Opinion No. 595 ceiling prices for 1959–1960 and 1968–1971, but were above the ceiling price for 1960–1968. Gillring took the position in its reports that paragraph (E) allowed it to reduce the $712,307.38 excess over the ceiling price for 1960–1968 by the extra amounts it would have earned had it charged the ceiling price during 1959–1960 and 1968–1971. The result would have been a refund obligation of only $390,521.80. The Commission, relying on a prior order in a similar case, *Phillips Petroleum Company,* 41 F.P.C. 415, 417 (1969), read paragraph (B) to preclude any offset, and rejected Gillring's reports. After the Courts finally affirmed Opinion No. 595, Gillring sought a declaratory order allowing the reduction. The Commission denied the request.

*Interpretation of Opinion No. 595*

When construction of an administrative regulation is at issue, courts owe great deference to the interpretation adopted by the agency, which will be upheld if it is reasonable and consistent with the regulation. *Udall v. Tallman,* 380 U.S. 1, 16–18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Shell Oil Co. v. FPC,* 491 F.2d 82, 88 (5th Cir. 1974). The court need not find that the agency's construction is the only possible one, or even the one the court might have adopted in the first instance.

Gillring's claim that Opinion No. 595 entitles it to an offset starts and finishes with the plain language of the opinion. While Gillring's interpretation has some vitality, it does not so forcefully leap from the text of Opinion No. 595 as to foreclose the Commission from rejecting it. Ordering paragraph (B) expressly limits paragraph (E), and (B) states that amounts "in excess of the applicable area rate shall be subject to refund." Furthermore, the "area rate as defined herein" in paragraph (E) is a *ceiling* rate. The ceiling rate concept is the foundation on which Opinion No. 595 is built. Gillring's interpretation imputes to the Commission an implied intent to relieve Gillring of the 1959–1960 and 1968–1971 contract rates, for which it bargained, just because its return in other years was excessive. In *Permian,* the Supreme Court rejected a variety of offsets imposed on the Commission by the Court of Appeals, which otherwise would have supported Gillring's argument here. *See* 390 U.S. at 826–827, 88 S.Ct. 1344. Surely such a dramatic shift in regulatory philosophy would have been signalled by more than ambiguous language in an ordering paragraph.

Finally, while not strictly controlling, the filed rate doctrine, reflecting a statutory bias in favor of retroactive rate reductions but not retroactive rate increases, was a consideration the Commission could take into account in interpreting Opinion No. 595. *See* 15 U.S.C.A. § 717d(a) (1976); *cf. Montana-Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951) (no retroactive ratemaking allowed).

*Equity*

In ordering a refund, the Commission is to explore and give due weight to

considerations of equity. *Continental Oil Co. v. FPC*, 378 F.2d 510, 532 (5th Cir. 1967), *cert. denied sub nom. Austral Oil Co. v. FPC*, 391 U.S. 917, 88 S.Ct. 1801, 20 L.Ed.2d 655 (1968). The statute allows refunds but does not require them. 15 U.S.C.A. § 717c(e). The ultimate balance of equitable consideration is committed to the Commission's discretion. *Placid Oil Co. v. FPC*, 483 F.2d 880, 905 (5th Cir. 1973), *affirmed, Mobil Oil Corp. v. FPC*, 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974).

Gillring asked the Commission to allow the offset on grounds of equity. To support its position, it made several claims: (1) consumers would not suffer from offset because they would pay only the "just and reasonable" ceiling rate, (2) Gillring was a small producer in need of capital, (3) Gillring would have extra funds for exploration and development to stop its declining sales, and (4) Gillring at all times collected rates below the new national minimum rate established in Opinion No. 749, *review pending sub nom. Tenneco Oil Co. v. FERC* (5th Cir. No. 76–2960).

 The Commission did not abuse its discretion in rejecting Gillring's request. A primary responsibility of the Commission is to "afford consumers a complete, permanent, and effective bond of protection from excessive rates and charges." *Atlantic Refining Co. v. Public Service Commission (CATCO)*, 360 U.S. 378, 388, 79 S.Ct. 1246, 1253, 3 L.Ed.2d 1312 (1959). Gillring's suggestion that consumers would not suffer from the refund offset defies plain arithmetic, ignores the ceiling rate concept, and flaunts the filed rate doctrine.

Also, while the Commission has excused refunds for some small producers, *see Small Producer Regulations*, Op. No. 742–A (July 27, 1976), the Commission is not required to favor small producers in every instance. Unlike the prices in Opinion No. 742–A, the rates here were not collected during a period of severe curtailment when consumers received a special benefit from the gas supplied.

Furthermore, Gillring's need for exploration and development funds has not been shown to be any different from that of other producers with declining sales. One difficulty with making allowances for exploration and development is determining whether the money will actually be spent for that purpose. The Commission's "work off" policy solved that problem by excusing the refund obligations to the extent exploration funds produced discoveries that were dedicated to interstate commerce. The Commission held that the work off procedure was sufficient to negate Gillring's equitable claim for exploration and development funds, and that judgment was within its discretion to make. The subsequent abandonment of work off in Opinion No. 699, *affirmed, Shell Oil Co. v. FPC*, 520 F.2d 1061 (5th Cir. 1975), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2661, 49 L.Ed.2d 394 (1976), does not help Gillring, for the price incentive for exploration and development under Opinion No. 699 replaced the incentive provided by work off. *See* 520 F.2d at 1082–1083. The higher price allowed by Opinion No. 699 for new gas—50 cents/mcf—makes Gillring's equitable claim for development funds weaker, not stronger.

Finally, Gillring's complaint that the rates it charged were at all times below the 18 cents/mcf minimum rate established in Opinion No. 749 is misplaced. The Commission has gone from area to national rate-making, and the Opinion No. 749 minimum rate now applies to all gas from wells commenced before January 1, 1973. The Opinion No. 749 rate is prospective only. It does not apply to gas sold during the years in question here. Opinion No. 595, which does apply, does not contain a minimum rate. Furthermore, the Opinion No. 749 rate was designed to be an incentive to maximize production from wells whose operation would not be profitable at a lower price. That consideration has little bearing on the reasonableness of refunds for excess charges made for gas that has already been produced and sold.

The Commission concluded the Opinion No. 749 rate was "immaterial" to Gillring's refund. That judgment appears sound. While the Commission has mentioned Opin-

ion No. 749 in excusing a refund, *Rosario Production Co.,* Op. No. 781 (Nov. 8, 1976), that case is distinguishable. There the refunds, if ordered, would have been insignificant in amount, would have gone to intrastate purchasers rather than the interstate customers, and Opinion No. 749 was only one of many factors mentioned by the Commission.

### Other Relief

Gillring requested relief from its entire refund obligation and to support its position repeated its equitable assertions of hardship. The Commission rejected the request summarily. On appeal, Gillring alleges the Commission failed to articulate its reasons. Having dealt with the claims in one context, however, the Commission did not have to repeat its assessment in another.

AFFIRMED.