Frank J. HALL, et al., Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

No. 81–4011.

United States Court of Appeals, Fifth Circuit.

Nov. 26, 1982.

Rehearing and Rehearing En Banc Denied March 14, 1983.

James Fleet Howell, Shreveport, La., for petitioners.

Joshua Z. Rokach, Atty., F.E.R.C., Washington, D.C., for respondent.

Goldberg, Fieldman, & Letham, P.C., Glenn W. Letham, Washington, D.C., Blanchard, Walker, O'Quin & Roberts, Robert Roberts, Jr., W. Michael Adams, Shreveport, La., for intervenor.

Before CLARK, Chief Judge, GARZA and JOHNSON, Circuit Judges.

GARZA, Circuit Judge:

This case presents for review an order of the Federal Energy Regulatory Commission [1] (FERC) denying the application of appellants, the Hall group (Hall), for a waiver of the notice requirements contained in § 4(d) of the Natural Gas Act [2] so as to permit the Hall group to collect from intervenor, Arkansas Louisiana Gas Company (Arkla), the difference between the purchased gas rate which the Hall group charged Arkla from September, 1961, to October, 1972, and the rate which Arkla paid the United States in royalties for gas obtained on leases during the same period. The instant action is but a part of a complex series of actions [3] in which Hall has attempted to enforce its contractual rights against Arkla as set forth in a 1952 contract. After eight years of contractual litigation in the Commission, the Louisiana state courts and the Supreme Court of the United States, it appears that Hall's only avenue for relief with respect to the time period between 1961 and 1972 is through the administrative provisions of the Natural Gas Act. Such relief was denied by the Commission and those orders are now presented to us for review. Because of the complexity of this case and its unusual posture before us, we set forth the facts and procedural background in detail.

*Background* [4]

Appellants, the Hall group, are producers of natural gas; Arkla is a customer who purchases their gas. In 1952, Hall and Arkla entered into a contract under which Hall agreed to sell Arkla natural gas from the Sligo Gas Field in Louisiana. The contract contained a fixed price schedule and a "favored nations clause." The favored nations clause provided that if Arkla purchased Sligo Field natural gas from another party at a rate higher than the one they were paying Hall, then Hall would be entitled to a higher price for their sales to Arkla. [5] In 1954,

---

1. The Federal Energy Regulatory Commission assumed most of the duties of the Federal Power Commission on October 1, 1977. In this opinion, the term "Commission" refers to either FERC or its predecessor agency, whichever was active during the time period referenced.

2. NGA § 4(d), 15 U.S.C. § 717c(d), provides: Unless the Commission otherwise orders, no change shall be made by any natural gas company in any such rate, charge, classification or service, or in any rule, regulation or contract relating thereto, except after thirty days' notice to the Commission and to the public .... The Commission *for good cause shown,* may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

3. By this Court's count, the present action represents the sixteenth time a court or agency has either affirmatively ruled on an issue in this case or has declined to review thereby affirming the lower court. *See* Appendix A, *infra.*

4. The facts at issue in this litigation have been largely decided in the contractual action between Hall and Arkla in the Louisiana state courts and in *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981). Our restatement reflects these findings.

5. The favored nations clause provided:
If at any time during the term of this agreement buyer should purchase from another party seller gas produced from the subject wells or any other well or wells located in the Sligo Gas Field at a higher price than is provided to be paid for gas delivered under this agreement, then in such event the price to be paid for gas thereafter delivered hereunder shall be increased by an amount equal to the difference between the price provisions hereof and the concurrently effective higher price provisions of such subsequent contract.

Hall obtained a certificate from the Commission to sell the gas under this contract. Pursuant to the relevant provisions of the NGA, Hall filed the contract containing the scheduled increases and the favored nations clause as its rate schedule with the Commission. In September, 1961, Arkla purchased certain leases in the Sligo Field from the United States and began producing gas on its leasehold. Arkla's payments to the United States for gas and liquids produced from that leasehold were higher than Arkla's payment to Hall under the 1952 contract. Prior to entering into this agreement, Arkla sought a legal opinion from its attorneys as to whether a favored nations clause would be triggered by its contract with the United States. Content that such escalation clauses were not triggered, Arkla made no effort to inform Hall about its payments to the United States.

### The Hall-Arkla Contractual Litigation

In 1974, Hall discovered the higher payments which the United States was receiving from Arkla as royalties for the gas produced from the Sligo Field contract. Hall instituted suit in the Louisiana state courts seeking damages for Arkla's asserted breach of contract amounting to the difference between the prices which Arkla paid the United States and those which it paid Hall. The state trial court found that Arkla's payment had triggered the favored nations clause, but held that the filed rate doctrine [6] precluded an award of contractual damages for the period prior to 1972. The court entered an award of damages for the post-1972 period during which appellants were "small producers" and, therefore, not bound by the filing requirement of the NGA. The Louisiana Court of Appeals affirmed the trial court with modifications,

**6.** The filed rate doctrine "forbids a regulated entity from charging rates for its services other than those properly filed with the appropriate federal regulatory agency." *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981).

**7.** In accordance with its opinion, the Louisiana Supreme Court remanded the measure of damages question to the state district court to enter judgment. The state court entered such judg-

*Hall v. Arkansas Louisiana Gas Co.,* 359 So.2d 255 (La.Ct.App.1978), and both parties appealed. The Louisiana Supreme Court denied Arkla's petition for review, *Hall v. Arkansas Louisiana Gas Co.,* 362 So.2d 1120 (La.1978), and certiorari was denied by the United States Supreme Court on the question of whether the interpretation of the favored nations clause should have been referred to the Commission. *Arkansas Louisiana Gas Co. v. Hall,* 444 U.S. 878, 100 S.Ct. 166, 62 L.Ed.2d 108 (1980) (Docket No. 78–796).

The Louisiana Supreme Court, however, did agree to review the lower court's findings with respect to the contractual damages sought by Hall for the 1961–72 period. The court reversed the Louisiana lower court's holding that. the filed rate doctrine barred Hall's contractual right to relief for Arkla's breach.[7] *Hall v. Arkansas Louisiana Gas Co.,* 368 So.2d 984 (La.1979). The United States Supreme Court granted Arkla's petition for a writ of certiorari and reversed the Louisiana Supreme Court. The Court held that Hall's action seeking contractual damages was barred by the filed rate doctrine. *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981) (hereinafter, *Arkla v. Hall*).

### The Primary Jurisdiction Action Before the Commission

After Hall initially filed suit in the Louisiana state court, Arkla petitioned the Commission for a declaratory order requesting them to take exclusive jurisdiction and declare that Arkla's royalty payments to the United States did not trigger the favored nations clause of the 1952 contract with Hall. The Commission declined, however,

ment, and Arkla appealed its determination through the state system and ultimately to the United States Supreme Court in Docket No. 79–1896. After the Supreme Court reversed the Louisiana Supreme Court in *Arkla v. Hall,* Docket No. 78–1789, it remanded No. 79–1896 for action consistent with its opinion. *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 917, 101 S.Ct. 3152, 69 L.Ed.2d 999 (1981).

**1188**

to exercise primary jurisdiction stating in three successive and "clarifying" opinions [8] that it would adhere to its policy against assuming jurisdiction over matters pending before a court. Arkla sought review of the Commission's orders in the United States Court of Appeals for the District of Columbia who, upon request of the Commission, remanded the administrative record to the agency for further consideration on May 25, 1978. FERC subsequently declined to exercise primary jurisdiction in an order issued May 18, 1979. The agency ultimately decided that the interpretation of the favored nations clause presented no issue upon which the Commission had particular expertise. *Arkansas Louisiana Gas Co. v. Hall,* Docket No. RI 76–28, Order Declining Jurisdiction (May 18, 1979) at 6–7. Arkla again petitioned the D.C. Circuit for review during which time the United States Supreme Court decided the contractual action against Hall in Docket No. 78–1789. On motion of [intervenor] Hall, the D.C. Circuit dismissed Arkla's appeal on the issue of primary jurisdiction without opinion.[9]

### Hall's Application for a Waiver

The present action arose as a corollary to the contract action. Following the Louisiana Supreme Court's decision that Hall was entitled to contractual damages, notwithstanding the filed rate doctrine, for the period between September, 1961 and October, 1972, the Commission informed Hall that in order to collect such damages, they would have to apply for a formal waiver of the notice filing requirements of NGA § 4(d). Hall filed its application conditionally asserting that a waiver of notice requirements was not necessary since § 4(d) did not apply to a judicial award of damages. Alternatively, they argued that "good cause" existed justifying the grant of the waiver.

The Commission denied Hall's request asserting four bases for its decision. *Arkansas Louisiana Gas Co. v. Hall,* Docket No. RI 76–28, Order Denying Application for Waiver (November 5, 1980). First, the Commission contended that a grant of waiver would violate its "long-established 'statutory bias' against retroactive rate increases." *Id.* at 10. Second, the Commission believed that the granting of Hall's request would expose present consumers to a potential liability for higher rates which should have been collected beginning in 1961. *Id.* Third, the Commission uttered its concern about "the possible unsettling effect that a waiver ... might have on other gas purchase transactions." *Id.* Finally, FERC was "troubled by the prospect of speculating as to what the Commission would or would not have done in 1961 had it been confronted at that time with a rate increase filing by the Hall group." *Id.* at 11. Although the Commission recognized that the "equities [were] favorable to the Hall group," it concluded that in the context of its "broader regulatory responsibilities," the waiver should be denied.

Hall now appeals from that order contending that it is arbitrary and capricious, unsupported by substantial evidence in the record, contrary to precedent and the Commission's long-standing policy of protecting contractually authorized prices, and based upon speculation and conjecture on the part of the Commission. Intervenor Arkla contends that further action in this administrative proceeding is precluded by the Supreme Court's subsequent decision in *Arkla v. Hall, supra.* Arkla contends that the issues presented here were determined in the contractual litigation and are precluded from further consideration by the doctrines

---

**8.** *See Arkansas Louisiana Gas Co. v. Hall,* Docket No. RI 76–28, Order Denying Petition (March 8, 1976); Order Denying Application for Rehearing (June 4, 1976); Order Clarifying Commission Order Denying Rehearing (November 11, 1976).

**9.** The court declined to dismiss a corollary issue which Arkla had continuously raised in the

administrative proceedings concerning the "small producer" status of the Hall group. That case has now been affirmed in an unpublished memorandum opinion issued May 28, 1982. *See also Arkansas Louisiana Gas Co. v. FERC,* 679 F.2d 260 (D.C.Cir.1982) (affirmance reported without opinion).

of res judicata and collateral estoppel.[10] It is also asserted that the present controversy is moot. The Commission contends that its decision is a proper exercise of its discretion and should, therefore, be affirmed. In the context of our opinion below, we dispose of each of these contentions.

### The Vitality of the § 4 Proceeding

■ We turn first to Arkla's motion to dismiss this review proceeding. Arkla asserts that the Hall group's attempt to obtain a waiver of the NGA filing requirements and a corresponding rate adjustment from the Commission is an attempt to relitigate their action for contractual damages which the Supreme Court held was barred under the filed rate doctrine. Arkla, however, misreads and construes too broadly the Supreme Court's decision in *Arkla v. Hall, supra.* In *Arkla v. Hall,* the Supreme Court did not hold, as Arkla contends, that the filed rate doctrine barred a grant to Hall of a waiver of the § 4 notice filing requirements and subsequent collection of rates; rather, the Court found that the filed rate doctrine barred Hall's claim for *contractual damages* (amounting to a retroactive rate increase). The Court stated that Hall could not obtain in a civil action for breach of contract what the Commission could not *"impose"* itself. *Arkla v. Hall,* 453 U.S. at 578 & n. 8, 101 S.Ct. at 2953 (emphasis in original). In the same statement, however, the Court clearly recognized the waiver provisions of § 4(d) and the power of the Commission to "waive the usual requirement of timely filing of an alteration in a rate." *Id.* Additionally, the Court expressly recognized that review of the Commission's November 5 Order denying waiver was pending before the United States Court of Appeals [for the Fifth Circuit].[11] *Id.,* n. 6. If indeed, *Arkla v. Hall*

precluded further consideration of the waiver application, then there would have been no need for the Court to acknowledge the current proceedings. It would have been appropriate instead to recognize the mootness of the proceedings.

The Supreme Court's opinion is further instructive with respect to this question. We note that the Court specifically acknowledged the preemptive authority which FERC holds in rate cases. *Id.* at 577–78, 101 S.Ct. at 2930–31. Furthermore, citing to § 4(d) of the NGA, the Court went on to state, *"Except when the Commission permits a waiver,* no regulated seller of natural gas may collect a rate other than the one filed with the Commission." *Id.* (emphasis added). This statement clearly evidences the Supreme Court's recognition of the vitality of the proceeding before us. *Arkla v. Hall* does not, as intervenor asserts, expressly foreclose the current administrative action.

■ Arkla also asserts that the issue before us—whether the Commission erred in denying Hall's request for waiver under § 4(d)—is moot since each of the reasons cited by the Commission for denying the waiver were expressly approved by the Supreme Court in its opinion. Again, Arkla overreads the high Court's decision. While the Supreme Court acknowledged the reasons set forth by the Commission in its November 5, 1980 Order denying Hall's waiver, it did not address the merits of the Commission's reasoning in the context of Hall's application for a waiver nor was that issue before the Supreme Court or determinative of the issue before it. Indeed, most of the Court's discussion of FERC's November 5, 1980 Order was merely in reference to what actions the Commission had taken, not whether such actions supported denial of Hall's application.[12] The thrust of Ark-

---

**10.** Arkla moved to dismiss this action on September 21, 1981. After the parties briefed the issue, this court denied Arkla's motion by order entered November 16, 1981, but agreed to carry the motion with the case.

**11.** The Court's opinion mistakenly cites to the order as pending before the District of Columbia Circuit. The Commission, however, subse-

quently notified the Court of the pendency of those proceedings in this Circuit.

**12.** For example, the Court expressly disapproved of the Louisiana Supreme Court's assumption that the higher rates sought by Hall would have been found reasonable by the Commission. In so doing, the Court stated, "[F]ar from approving the rate here in issue, the Com-

la's motion to dismiss is based upon its erroneous and overbroad reading of the Supreme Court's decision in *Arkla v. Hall,* and accordingly, it is without merit.

 There are still other reasons to deny Arkla's motion. Principles of *res judicata* bar relitigation of the same cause of action between identical parties in which a valid final judgment has been rendered on the merits. *See Judgments and Orders,* Federal Procedure, L.Ed. § 51:189 (Interim Binder 1982). Similarly, collateral estoppel precludes relitigation of identical issues previously decided in an action. *Id.* § 51:214. The state court action involved a dispute on a contractual claim between Hall and Arkla. The present action involves an administrative claim under the Natural Gas Act between Hall and the Commission. The waiver issue was not and could not have been litigated in the state court action. Accordingly, these principles do not support Arkla's assertion that the present action is barred.

We do, however, note the unusual posture in which this case is presented to this court. When Hall originally filed its application for a waiver, the Commission believed that the waiver was "technically" necessary so that Hall's recovery of contractual damages (which at the time had been authorized by the Louisiana Supreme Court) would not contravene the notice filing requirements of the NGA. *See, Arkansas Louisiana Gas Co. v. Hall,* Docket No. RI 76–28 (May 18, 1979 Order). After the Supreme Court's decision in *Arkla v. Hall, supra,* this proceeding took on a very different outlook. What was previously considered a technical requirement suddenly became the only method—an administrative one—for Hall to recover its contractually authorized rates.

This case was in some respects mooted by the Supreme Court's prior opinion. Since it was originally filed so that Hall could comply with what FERC believed to be the technical requirements of the NGA before petitioners could recover contractual damages in the state court action, the Supreme Court's decision that Hall could not recover contractual damages negated the need for this court to rule on the propriety of the Commission's denial of the "technical" waiver. If Hall could not recover contractually, it did not need to technically comply with the NGA.

mission has expressly declined to speculate on what its predecessor might have done." 453 U.S. at 581, 101 S.Ct. at 2932. Clearly, this statement does not evidence the Court's belief that the above reason supported the denial of Hall's waiver application; rather, it is acknowledged to support the Court's finding that the Louisiana Supreme Court improperly attempted (by assumption) to perform a duty expressly reserved to the Commission—the determination of the reasonableness of rates.

In another instance, the Court stated:

In asserting that the filed rate doctrine has no application here, [the Hall Group] contend[s] first that the state court has done no more than determine the damages they have suffered as a result of Arkla's breach of the contract. No federal interests, they maintain, are affected by the state court's action. But the Commission itself has found that permitting this damages award could have an 'unsettling effect ... on other gas purchase transactions' and would have a 'potential for disruption of natural gas markets.'

453 U.S. at 579, 101 S.Ct. at 2931. Again, the Court's statement only recognizes, without express approval or disapproval, the actions previously taken by the Commission in a separate, but related, administrative proceeding.

On still another occasion, the Court made the following statement in a footnote which bears upon the Commission's concern that current ratepayers might potentially bear the burden of rates attributable to prior customers:

Apparently in an effort to challenge this determination, respondents assert that the damages would be paid entirely from Arkla's corporate assets and would not be passed on to consumers. We see no reason why this fact, even if true, would alter our analysis. In any case, the record does not support respondents' assertion that Arkla could not pass the damages award along to its customers. In its order denying respondents' request for a waiver of the § 4(d) notice requirement, the Commission conceded that Arkla would have the right to do so, even though all the natural gas for which Arkla would be paying was long since sold.

453 U.S. at 579 n. 10, 101 S.Ct. at 2931. No one, however, challenges Arkla's right to seek a rate increase to account for any additional rate payments it might have to make to Hall. The Court's statement does not suggest whether the Commission would have to grant such a rate increase, nor does it intimate what weight this factor should carry in consideration of Hall's application for waiver.

There is, however, an administrative component to this case which we believe remains alive. Although Hall is not entitled to *contractual damages* by virtue of the filed rate doctrine, it is entitled to the *rates* which it contracted with Arkla to receive over which the Commission has authority to regulate. The only reason Hall has not received these rates is that it failed to administratively file for them with the Commission because Arkla did not inform them of the higher payments it was making to the United States. Section 4(d) permits the Commission, for good cause shown, to waive the notice of filing requirement. Since the Supreme Court has foreclosed the civil action remedy, it thus appears that the only avenue of relief available to Hall, if any exists at all, is the administrative one arguably provided by § 4(d).

### The Propriety of the Commission's Orders

■ We turn, therefore, to the orders presented for review to determine if the Commission erred in denying the application of Hall for a waiver of the notice requirements contained in NGA § 4(d). In reviewing Commission orders granting or denying waivers of rules or regulations, we have deferred to the Commission when its decision did not represent an abuse of discretion. *See, e.g., Columbia Gas Transmission Co. v. Allied Chemical Corp.*, 652 F.2d 503, 520 n. 16 (5th Cir.1981); *Columbia Gas Development Co. v. FERC*, 651 F.2d 1146, 1160 n. 18 (5th Cir.1981). A Commission order denying a waiver of statutory requirements is similarly entitled to affirmance if there exists a rational basis for the Commission's decision, and it is supported by "substantial evidence." *Id.; see City of Piqua, Ohio v. FERC*, 610 F.2d 950, 955 (D.C.Cir.1979). It is necessary then to examine the record and applicable law to determine if the four reasons set forth by the Commission in its order support its denial of Hall's application for a waiver. We find that the record does not support the Commission's order.

**13.** While the facts of *Piqua* are not totally analogous to this case, we do not find the distinc-

### (1) Retroactive Ratemaking

The first reason set forth by the Commission justifying its denial of Hall's application for a § 4(d) waiver was its "long-established 'statutory bias' against retroactive rate increases." As support for its position, the Commission cited to this court's decision in *Gillring v. FERC*, 566 F.2d 1323, 1325 (5th Cir.), *cert. denied*, 439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115 (1978). However, neither *Gillring* nor the Commission's policy against retroactive ratemaking are applicable to the facts of this case.

In *Gillring*, the petitioner sought a retroactive increase in the rates it had on file with the Commission during one time period so that it could offset the amount obtained in that increase against amounts the Commission had ordered Gillring to refund for a different period in which the company's rates had exceeded area rate ceilings. Gillring sought to obtain a rate increase up to the Commission's ceiling to be applicable to a time period in which Gillring had filed and collected a lower rate in accordance with the gas purchase contract it had filed as a rate schedule. There was no question in *Gillring* that when it filed its schedule, it intended and had contracted to obtain a designated rate. Subsequently, the company sought a rate higher than that ever filed with the Commission or contemplated by the rate schedule/contract. A purer example of an action for a retroactive rate increase would be difficult to imagine; a waiver of § 4(d) notice filing requirements was neither involved nor applicable in *Gillring*.

■ The question in the present case—whether the grant of a waiver to permit parties to effectuate their contractual agreement violates a policy against retroactive ratemaking—was squarely presented to the United States Court of Appeals for the District of Columbia Circuit in *City of Piqua, Ohio v. FERC*, 610 F.2d 950 (D.C.Cir. 1979).[13]

In *Piqua*, the D.C. Circuit was presented with a case in which FERC had granted a

tions significant for purposes of our analysis here. *Piqua* involved application of the waiver

waiver of the analogous statutory notice filing requirements of the Federal Power Act. The city challenged FERC's grant of the waiver and assignment of a retroactive date to the rate increases on the grounds that the grant was: (1) unauthorized by statute; (2) prohibited by the policy against retroactive ratemaking; and (3) unsupported by substantial evidence. The court affirmed on all three grounds. Having found that the Commission was statutorily authorized to allow rates to take effect without requiring advance notice, the court reasoned that it would not constitute retroactive ratemaking, when good cause was shown, for the Commission to give effect to the intent of the parties whose contractually authorized rate schedules called for a rate increase to be effective at a designated time. The court stated:

> In this case, two parties agreed on new rate schedules and on the effective date for the new contract. *The negotiated rate change was not retroactive; it was prospective from the date of the contract.* Filing under section 205(d) allowed the Commission to review the agreement to ensure its reasonableness. Such review does not, when good cause is shown, however, preclude enforcing the contract provision as of the date specified therein. Moreover, the Commission, in finding the Agreement reasonable, *did not retroactively substitute a rate;* it merely approved the rate change and effective date agreed upon by the parties.

610 F.2d at 954–55 (emphasis added). A similar position was espoused by FERC in

the administrative proceeding in which it had granted the waiver. *See, Dayton Power & Light Co.,* Docket No. ER77–546, Order Granting Rehearing and Correcting Prior Order (January 18, 1978); Order Denying Rehearing (April 3, 1978).

■ The facts of this case have been established by prior litigation in this dispute. Those facts establish that the 1952 contract between Hall and Arkla contained an escalation clause providing for the effectuation of an increase in rates should Arkla pay an amount higher than those rates it submitted to Hall. It is now also established that the parties intended the favored nations clause in their contract to cover the present situation thereby permitting the Hall group (had they filed) to recover from Arkla the equivalent [14] of the rates it paid the United States beginning in September, 1961. We agree with the D.C. Circuit Court that the policy against retroactive ratemaking which precludes Commission "substitution of an unreasonably high or low rate with a just and reasonable rate" is "immediately distinguishable" from the present situation where the Commission's waiver gives prospective application to the rates contractually authorized by the parties at the effective date contemplated by the contract. The Commission erred in not giving effect to this policy which it had previously distinguished and espoused.

### (2) Exposure of Present Consumers to Liability

The second and perhaps most compelling reason set forth by the Commission justify-

provisions of the Federal Power Act, 16 U.S.C. § 824d(d) (1976). It is well settled, however, that the relevant provisions of the Federal Power Act and Natural Gas Act "are in all material respects substantially identical." *FPC v. Sierra Pacific Power Co.,* 350 U.S. 348, 353, 76 S.Ct. 368, 100 L.Ed. 388 (1956); *Accord, Arkla v. Hall,* 453 U.S. at 577 n. 7, 101 S.Ct. at 2930. In *Piqua,* the waiver granted was for a time period less than one year as opposed to the twenty-year period presented in this case. We discuss the relevancy of the twenty-year delay subsequently; however, we note that the interval for which a waiver is sought does not affect the question of whether the grant of such waiver violates a policy against retroactive rate increases. Finally, we find no significance in the

fact that the parties in *Piqua* had agreed on new rate schedules and a new effective date for the new contract and the present situation where the parties provided in the original contract for new rates to take effect upon a date triggered by a specified transaction (i.e., the payment by Arkla of higher prices for gas to another party). In both cases, the intentions of the parties were the same: the effectuation of new rates to be charged prospectively from a date ascertainable in the contract.

**14.** We use the term "equivalent" assuming for present purposes that the rate sought by Hall would be just and reasonable. We discuss this issue in more detail; *infra.*

ing its denial of the § 4(d) waiver was its concern that 1980 consumers might be exposed to liability for rates attributable to 1961 consumers. The clear import of this reasoning is that a different group of consumers will pay for the gas than the one which used it. While the proposition is a logical one, we note that there is little evidence in the record to suggest that Arkla's 1961–72 customers are in fact different from its 1980 customers.[15] To the extent that the record is devoid of information in this regard, the Commission's reasoning lacks a firm basis of support.

■ It is also to be noted, however, that the Commission's reasoning admits that its concern is merely one of *potential* liability to the consumer. It is far from clear that Arkla would be entitled to pass along to its customers an amount representing its delayed payment for purchased gas when the delay, particularly the length of the delay, was the result of Arkla's own, albeit nonfraudulent, actions. Before any rate paid by Arkla to Hall could be passed on to the consumer, Arkla would have to file with the Commission a schedule and notice of rate change and bear the burden of establishing the just and reasonableness of its request. *FPC v. Tennessee Gas Transmission Co.,* 371 U.S. 145, 83 S.Ct. 211, 9 L.Ed.2d 199, (1962); Natural Gas Act § 4(e), 15 U.S.C. § 717c(e). It is well settled that the Commission's duty under the NGA statutory scheme when con-

sidering the reasonableness of rates is "to afford consumers a complete, permanent and effective bond of protection from excessive rates and charges." *Atlantic Refining Co. v. Public Service Commission (CATCO),* 360 U.S. 378, 388, 79 S.Ct. 1246, 1253, 3 L.Ed.2d 1312, 1319 (1959). The clear import of Supreme Court decisions, as evidenced by *CATCO,* is that the underlying purpose of the NGA is protection of the consumer "*even though this may result in some injustice to the producers.*" *See* Summers, Oil and Gas § 926 (1966) (emphasis added). Although it is undisputed that the cost of purchased gas is a basic component of a regulated entity's rate structure, the Commission's duty under the Act to protect consumers together with the unusual delay attributable to Arkla's own actions present a scenario in which it is far from clear whether Arkla could justify its requested rate increase. *CATCO* teaches that as between Arkla and its customers, the Commission has a duty to protect the consumer even if such results in some "injustice" to, in this case, Arkla.[16]

■ We do not make these observations to foreclose FERC's consideration of a potential rate increase application by Arkla, but only to emphasize that the reason proffered by the Commission as to the "potential" liability of present consumers is very much a speculative proposition at this point

**15.** At oral argument, for example, Hall's counsel asserted that to the best of his information, the gas purchased from Hall was sold by Arkla to line industries in Southwest Arkansas wherein the possibility that consumers over the twenty-year period would be similar is more probable.

**16.** There are other considerations which weigh against the conclusion that Arkla would be entitled to pass on to its consumers a rate increase resulting from increased payments to Hall. As between Hall and Arkla, the Commission has admitted that the equities favor the Hall group. The NGA was drafted to encourage and protect the right of parties to establish rates by individual contract. The Act "evinces no purpose to abrogate private rate contracts as such." *United Gas Pipe Line Co. v. Mobile Gas Corp.,* 350 U.S. 332, 338, 76 S.Ct. 373, 378, 100 L.Ed. 373 (1956). In granting Hall's waiver, the Commission could promote the pur-

poses of the Act and preclude Arkla from breaching its contract by delaying Hall's notice filing and using the length of delay to defeat Hall's application. On the other hand, if the Commission took this course but felt compelled to grant a rate increase to Arkla, it would neglect in some respects its duty to protect consumers. The dilemma is one which suggests that the Commission deny any subsequent application for rate increase by Arkla arising from these proceedings. In so doing, the Commission would effectuate dual purposes of the Act. Clearly, the Commission could consider these factors in ruling on whether a rate could pass on. We do not intimate that this is the course which the Commission should take; we only use this as an illustration of the uncertainty of the Commission's reliance on potential liability to the consumer as a reason for denying Hall's application.

in time. This reason, by itself, does not support the Commission's denial of Hall's waiver.[17] We, therefore, examine the remaining reasons proffered by the Commission in determining whether it has abused its discretion.

### (3) Unsettling Effect on Other Contract Purchases

The third reason cited by the Commission for denying Hall's application was "the possible unsettling effect that a waiver in this case might have on other gas purchase transactions." The Commission found that if Hall were granted a higher rate for its gas, a strong likelihood existed that other claims would arise asserting that this increase triggered the operation of indefinite price escalator provisions in other contracts in the Sligo Field geographical area. Hall contends that this assertion is speculation and conjecture on the part of the Commission about unidentified pipeline companies and that there is no substantial evidence to support this reasoning in the record of the subject proceeding.

It is true that most of the arguments in brief to this court with respect to this issue were drawn from information outside the administrative record. It is conceded that the Commission may draw from its own knowledge and expertise, as well as its own records, information upon which to support this conclusion. Our review of such information does not, however, support the Commission's concern that numerous transactions would be affected.

The Commission's reasoning is additionally flawed by the unique posture of this case. In this action, the Louisiana courts determined the effect of the royalty payments on the most favored nations provision with the approval of Hall and the sanction of the Commission. On two occasions, the Commission declined to exercise primary jurisdiction[18] and decide the issue for itself. The determination of the Louisiana courts, however, is clearly precedential only in the present action involving Hall and Arkla. Several factors compel this conclusion.

First, the Supreme Court has ruled that the only avenue available to Hall to obtain the rates for which it contracted is for the Commission to grant a waiver to permit the rate schedule to take effect. This procedure, therefore, is the only method available to other parties who might be entitled to similar relief. Unlike the present action, however, other parties would not be entitled to rely upon the Louisiana courts' interpretation of the 1952 contract/rate schedule at issue presently. Those decisions simply have no res judicata or collateral estoppel effect in a different administrative proceeding between different parties.

If an issue similar to the present one were ever addressed to the Commission again, the agency would have to decide it rather than defer to a state court as occurred in this case. The Commission has previously considered many factors which effectuate the "triggering" of a most favored nations clause, *see Shell Oil Co.,* Opinion No. 382, 29 F.P.C. 498, 499 (*affirmed Shell Oil Co. v. FPC,* 334 F.2d 1002 (3d Cir. 1963)), and as the Commission notes in brief, such factors do not suggest that, if the Commission was deciding, a royalty payment such as the present one would necessarily trigger operation of a most favored nations clause. The Commission, in fact, has expressly recognized that varying interpretations to favored nations clauses result in differing outcomes. In its May 18,

---

**17.** The authority of the Commission to deny any request by Arkla for a rate increase was expressly recognized by Justice Stevens in his dissent in *Arkla v. Hall, supra,*

> The short answer to the first concern [that the burden of the award might be passed on to consumers] is that there is no more reason to assume that this award will justify an increase in utility rates than any other damages judgment that a public utility may be

required to pay; if the regulatory concern is valid, the agency having jurisdiction over Arkla's sales has ample authority to require its stockholders rather than its customers to bear this additional cost.

453 U.S. at 607, 101 S.Ct. at 2945–46.

**18.** *See* Appendix A, Chronology of Agency/Court Action on Primary Jurisdiction Issue, *infra.*

1979 Order declining to exercise primary jurisdiction in this very action, FERC argued:

> Since the meaning of a favored nation clause depends upon the intentions of the parties to the contract, we see no need for uniform interpretation of all favored nation clauses. Indeed, uniform interpretation would seem to be impossible.[19]

There is little support then in the record for the Commission's conclusion that the granting of Hall's waiver would have an "unsettling effect" on other gas purchase contracts. Indeed, the applicable law leads to a conclusion quite the contrary.

Finally, we acknowledge the reasoning of Justice Stevens in dissent in *Arkla v. Hall* who addressed the merits of the very concern set forth by the Commission:

> The second concern [that other claims might arise] seems exaggerated because it applies only to contracts executed before 1961, ... and it seems unlikely that many large purchasers of natural gas could successfully have concealed violations of escalation clauses from their suppliers. To the extent that this case does have counterparts in such contracts, however, it seems to me that those cases should be decided in the same way.

453 U.S. 607–08, 101 S.Ct. at 2946. In summary, we find no record support, legal support, or for that matter, practical support for the Commission's conclusion that other gas purchase transactions would be affected.

### (4) Speculation about 1961 Commission

The final reason set forth by the Commission to justify its decision was its reluctance to speculate as to what the Commission would have done if confronted in 1961 with a Hall request for enforcement of its most favored nations clause. The fact is that FERC wholly ignores or refuses to recognize exactly what the 1961 Commission decided when faced with an identical question. In *The Pure Oil Company*, 25 F.P.C. 383 (1961), the Commission concluded that although favored nations clauses would be prohibited in the future, it would not eliminate such provisions from previously executed contracts. *Id.* at 388–89; Order No. 232, 25 F.P.C. 379 (1961). Speculation as to what the 1961 Commission would have done, therefore, was wholly unnecessary. FERC's attempts at distinguishing *The Pure Oil Company* are futile and without merit. Indeed, the Commission today concedes the legality of the 1952 contract when it acknowledges Hall's right to contractual damages following 1972. *See, Hall v. Arkla*, 453 U.S. at 606–07, 101 S.Ct. at 2945 (Stevens, J. dissenting).

We note that, even if some ambiguity as to what the 1961 Commission would have done existed, FERC has previously speculated over long time periods about what a prior Commission would have done. *See, e.g., Plaquemines Oil and Gas Company,* Opinion No. 572–A (April 29, 1970) (1970 Commission found that 1961 Commission likely would have found rates acceptable).

Finally, FERC's argument that the 1961 Commission very likely would have looked with disfavor on a Hall filing and found no triggering of the escalation clause is not compelling. Twice, FERC was asked to decide the issue and declined thereby permitting the state court to consider it. It seems particularly arbitrary that the Commission could (1) decline to exercise primary jurisdiction over an issue, deferring to a state court's power to interpret the contractual provision, (2) take issue with the state court's determination contrary to what the Commission "may" have found, and then (3)

---

19. *Arkansas Louisiana Gas Co. v. Hall,* Docket No. RI 76–28, Order Declining Jurisdiction (May 18, 1979) at 8.
Citing to the above administrative case, this court similarly recognized the less-than-absolute meaning and effect that an interpretation of a favored nations clause in one case would have on others in general. In *Pennzoil Company v. FERC,* 645 F.2d 360, 386 (5th Cir. 1981),

*cert. denied,* 454 U.S. 1152, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982), we stated:
> Since the escalation clause's meaning depends on the contracting parties' intentions, which in turn depends on the circumstances of its execution, identical language in different contracts could be interpreted to have different meanings ....

use the excuse that they are unable to determine what a prior Commission would have done to deny Hall's waiver in the related administrative proceeding.

■ In conclusion, we find that the only reason set forth by the Commission which even arguably supports the denial of Hall's application for a § 4(d) waiver is the concern that present consumers might potentially be subjected to liability for prior rates if Arkla were permitted to pass on such rates. As previously noted, this concern is highly speculative at this time and an impressive argument exists supporting the conclusion that Arkla would not be permitted such a rate increase. Potential liability to consumers, by itself, simply does not support the Commission's decision to deny Hall's waiver request, particularly when the equities of this action weigh more in favor of Hall than Arkla. We find that the Commission abused its discretion in denying Hall's application for a waiver.

### Relief

Our decision that the Commission erred in failing to grant Hall's requested waiver does not end the proceeding before us. On brief, Hall requests only that the Commission's orders be reversed. As part of its rather convoluted argument, however, Hall contends that the rates which it seeks to obtain (which it asserts are equivalent in amount to the contractual damages sought in the state court action) have been found by the Commission to be below just and reasonable area rates in effect for the time period involved. Accordingly, the question arises as to whether this court can remand this case to the agency to permit Hall to collect the rates which it seeks without allowing further action by the Commission. We believe there are several reasons to decline from so acting, and accordingly, we remand this proceeding to the Commission to determine the just and reasonableness of the rates sought by Hall.

First, it is to be noted that in the latter part of the state court action, the Commission reversed itself and declined to speculate on the reasonableness of the rate schedule submitted by Hall. Hall asserts, however, that the Commission is bound by earlier admissions in this action.

On several occasions, the Commission has stated that the contractually authorized prices sought by Hall were within the applicable just and reasonable area rates. Its first statement to this effect came in its May 18, 1979 Order declining to exercise primary jurisdiction over the contractual action. In its order, the Commission discussed the impact of the contractual damage action on its regulatory responsibilities. In finding such impact to be minimal, the Commission stated, "on the facts of this case, the damages do not exceed the applicable area rate ceilings" and "the rates requested are within what the Commission had determined to be the zone of reasonableness."[20]

The Commission again acknowledged the reasonableness of the rates sought by Hall in its brief as *Amici Curiae* to the United States Supreme Court in Docket No. 78–986. In that action Arkla sought review of the question of whether the interpretation of the most favored nations clause in the 1952 contract should have been referred to the Commission. In its brief, FERC contended that Hall sought only to recover from Arkla damages which did not exceed Commission applicable area rate ceilings.

Finally, the Commission again recognized the reasonableness of the rates sought by Hall in its original order before us on review. In footnote 4 of its November 5 Order, the Commission stated,

The rates (11.7432 cents per Mcf to 14.-0508 cents per Mcf) would, however, be within the Commission ceilings in effect during that time.

The following day, FERC issued an "Errata Notice" deleting the text of footnote 4 from its opinion. In its Order Denying Rehear-

---

**20.** *Arkansas Louisiana Gas Co. v. Hall,* Docket No. RI 76–28, Order Declining Jurisdiction (May 18, 1979) at 10.

ing issued January 2, 1981, the Commission explained that "the deleted footnote was not a necessary part of the Commission's decision" and that its inclusion "was an inadvertent printing error." While the latter explanation is questionable, we note that the deleted footnote is clearly not binding on the Commission.

The Commission now asserts that it has reconsidered its prior determinations which were based on erroneous interpretations of the 1952 contract and has concluded that the Hall rates are not so clearly within the maximum, lawful area rates. The Commission first indicated its reconsideration of this question in its brief filed in November, 1980, as *Amici Curiae* to the Supreme Court in Docket No. 79–1896. That case was the appeal from the Louisiana state court system awarding contractual damages to Hall consistent with the Louisiana Supreme Court decision in *Hall v. Arkansas Louisiana Gas Co.,* 368 So.2d 984 (La.1979) (reversed subsequently in *Arkla v. Hall, supra,* Docket No. 78–1789). Arkla sought review of the Louisiana Court of Appeals' ruling that the contractual damages awarded (for both the pre- and post-1972 periods) to Hall exceeded Commission ceilings. In its brief the Commission explained the reason for its reversal:

> The decision of the Louisiana Court of Appeal rejecting Arkla's contention is based in part on the Commission's conclusion, in its order refusing to exercise primary jurisdiction, that "the damages do not exceed applicable area ceiling rates." Upon careful reexamination of the information available to it, the Commission has determined that its earlier conclusion was based on an incorrect understanding of the contract between Arkla and respondents that is involved in this case.

At the present time the Commission is unable to determine conclusively whether its ceiling rates have been exceeded as a result of the damages awarded to respondents.

. . . . .

The Commission's previous conclusion that "the damages does not exceed applicable area ceiling rates," was premised upon the erroneous belief that Arkla's contract with respondents was based on sales at the plant, and not at the wellhead.[21] As a result of this incorrect interpretation, the Commission eliminated from its calculations those damages that apparently represented payment for removable liquids, and found that the damages awarded for the actual gas (*i.e.,* residue gas) were within the area ceiling rates. That premise is now undermined by the ruling of the Louisiana courts . . . that Arkla's contract with respondents provided for sales of the entire gas stream at the wellhead, including removable liquids.

On the same day that the United States Supreme Court reversed the Louisiana Supreme Court in *Arkla v. Hall, supra* (Docket No. 78–1789), it granted certiorari in Docket No. 79–1896, vacated the damage computation awarded by the Louisiana Court of Appeals, and remanded the case in light of its decision in Docket No. 78–1789. *Arkla v. Hall,* 453 U.S. 917, 101 S.Ct. 3152, 69 L.Ed.2d 999 (1981). With respect to Hall's contention that the FERC is bound by its prior statements acknowledging the reasonableness of Hall's requested rates, the Court's decision in Docket No. 79–1896 undermines and defeats whatever weight such reasoning possessed.

21. All natural gas produced at the wellhead contains varying amounts of liquefiable hydrocarbons (LHC's) in a gaseous state. Natural gas including these LHC's is known as wet gas. At the plant, LHC's can be extracted from the wet gas and after processing can be sold as a separate product. Natural gas from which LHC's have been removed is known as dry gas. Under the contract Hall sold Arkla wet gas. The Commission's rate regulations prescribe the same maximum rate for the sale of dry and wet gas. Arkla contends that the contractual damage award granted Hall the market value of the LHC's in addition to the price of gas as though the sale only involved a plant sale of dry gas. As a result, it is asserted that the rate previously acknowledged as reasonable exceeds by almost two times the maximum rate for wet gas to which Hall is entitled.

■ Even more fundamental, however, to this court's decision to remand this case to the Commission on the question of the reasonableness of rates, is the statutory scheme of the Natural Gas Act itself. The regulation of rates for the sale of natural gas for resale in interstate commerce by producers of natural gas was vested by Congress exclusively in the Commission under the Natural Gas Act. *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 611–12, 64 S.Ct. 281, 291–92, 88 L.Ed. 333 (1944); *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206 (1945); *Phillips Petroleum Co. v. Wisconsin,* 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954). In the context of this administrative action, our finding that the Commission should have granted Hall's application for waiver of the notice provisions of § 4(d) does not end the Commission's duty to determine the just and reasonableness of those rates. It is, therefore, necessary that we remand this action to permit the Commission to grant Hall's waiver and to provide Hall with the opportunity to file its rates for Commission review on their reasonableness.

In so doing, we make the following observations. First, the Commission's determination of the reasonableness of Hall's rates should not be inconsistent with the computation of Hall's damage recovery for the post-1972 period, at least to the extent that these computations are analogous. Second, should the Commission find the rates requested by Hall to exceed the applicable area rate ceilings, it would appear that the Hall group would at least be entitled to the ceiling rate.

### Final Considerations

■ Two final considerations merit attention with respect to our decision. First, unlike the situation presented in *Hall v. Arkla, supra,* in which the "filed rate" doctrine precluded the award of contractual damages amounting to a retroactive rate increase, the grant of a waiver by the Commission does no violence to the filed rate doctrine. The D.C. Circuit addressed this contention in *City of Piqua v. FERC, supra,* and we adopt their reasoning:

"[The filed rate doctrine provides that a utility] can claim no rate as a legal right that is other than the filed rate . . . ." This court, in discussing the doctrine, stated: "The considerations underlying the [filed rate] doctrine . . . are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant." *City of Cleveland v. FPC,* 174 U.S.App.D.C. 1, 10, 525 F.2d 845, 854 (1976). This purpose is unaffected by the Commission's waiver of the notice requirement upon good cause, thus allowing rate changes, found by the Commission to be just and reasonable, to become effective on the date agreed by the parties.

610 F.2d at 955.

Second, our decision today promotes each of the policies underlying the Natural Gas Act, particularly § 4. Congress in drafting these provisions sought to preserve the integrity of private contractual arrangements. At the same time, Congress required companies to comply with its requirements of notice for a rate change so as to provide the Commission with the opportunity to review rates. In so doing, Congress expressed both "its conviction that the public interest requires the protection of consumers from excessive prices" and its "[manifest] concern for the legitimate interests of natural gas companies." *United Gas Pipe Line Co. v. Memphis Light, Gas & Water Division,* 358 U.S. 103, 113, 79 S.Ct. 194, 200, 3 L.Ed.2d 153 (1958). The granting of a waiver by the Commission gives effect and preserves the integrity of the private contractual arrangement entered into by Hall and Arkla. The granting of a waiver, but only for good cause shown, gives credence to the § 4 notice filing requirements drafted by Congress. In remanding to the Commission, we acknowledge the authority of the agency to review rates so as to protect consumers from unauthorized, excessive prices. Finally, our decision recognizes the legitimate interests of

the Hall group whose showing of good cause entitles them to the waiver of notice filing requirements.

REVERSED and REMANDED WITH INSTRUCTIONS.

## Appendix "A"

A. Chronology of decisions on the contractual issues:

(1) *October 14, 1977*—Louisiana state court renders original opinion.

(2) *May 1, 1978*—Louisiana Court of Appeals affirms with modifications.

(3) *September 22, 1978*—Louisiana Supreme Court denies Arkla's petition on the interpretation of the favored nations clause.

(4) *March 5, 1979*—Louisiana Supreme Court reverses lower courts on damages for the 1961–72 contractual period and remands.

(5) *May 17, 1979*—On remand, Louisiana state district court enters award of damages for Hall.

(6) *October 1, 1979*—United States Supreme Court denies Arkla's petition for certiorari on interpretation of favored nations clause.

(7) *January 22, 1980*—Louisiana Court of Appeals affirms state district court entry of damages.

(8) *May 2, 1980*—Louisiana Supreme Court declines to review damages question.

(9) *July 2, 1981*—United States Supreme Court reverses Louisiana Supreme Court's ruling in (4) above.

(10) *July 2, 1981*—United States Supreme Court remands damages question in (7) above.

B. Chronology of agency/court action on primary jurisdiction issue:

(11) *March 8, June 4, November 8, 1976* —The Commission declines to grant Arkla's motion for a declaratory order.

(12) *May 25, 1978*—United States Court of Appeals for the District of Colum-

bia Circuit remands Commission's orders at their request.

(13) *May 18, 1979*—FERC declines to exercise primary jurisdiction.

(14) *October 19, 1981*—The D.C. Circuit grants motion to dismiss appeal.

C. Chronology of present action on waiver issue:

(15) *November 5, 1980*—The Commission denies Hall's request for a waiver.

(16) Hall appeals in present action to United States Court of Appeals for the Fifth Circuit.

CLARK, Chief Judge, dissenting.

The majority assumes that the Commission, in its discretion, may and should deny Arkla the rate increase it will surely seek as a result of today's decision. I respectfully disagree. Under the due process clause no public utility may be compelled to absorb its own costs. The most basic of such costs are expenditures for gas purchases, whether incurred routinely or, as here, as the final product of protracted litigation. Because Arkla's ratepayers rather than Arkla received the benefit of its noncompliance with the "most favored nation" clause in the 1960s, it follows inevitably, in my view, that the ratepayers must bear the burden of Arkla's belated compliance now.

This conclusion alters the analysis of this dispute for me. Rather than weighing the equities between Arkla and Hall, the balance must be struck between Arkla's ratepayers and Hall. When the Commission made this inquiry, it decided that imposing the costs of compliance on today's ratepayers would be inequitable. I cannot disagree. If these ratepayers are not the same as those who should have borne the cost twenty years ago, the inequity is obvious. Even if the identity of the ratepayers has remained constant, however, the effects of a retroactive increase on the long-completed business affairs of innocent ratepayers would be equally unjust. In either case, there is sufficient evidence to support the Commission's conclusion. Therefore, without reaching the other grounds discussed by the majority, I respectfully dissent.