United States Court of Appeals,

Fifth Circuit.

Nos. 95-60553, 95-60636.

TEXAS EASTERN TRANSMISSION CORPORATION, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

Dec. 30, 1996.

Petition for Review of Orders of the Federal Energy Regulatory Commission.

Before HIGGINBOTHAM, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Petitioner Texas Eastern Transmission Corporation ("TETCO") appeals a decision by

respondent Federal Energy Regulatory Commission ("FERC") to apply the filed-rate doctrine to

preclude TETCO from retroactively assessing certain customers (the "customers") rates based on a

different rate methodology than it previously imposed.[1] Some of these customers have intervened

---

[1] The Supreme Court has summarized the filed-rate doctrine as "bar[ring] a regulated seller of natural gas from collecting a rate other than the one filed with the Commission and prevent[ing] the Commission itself from imposing a rate increase for gas already sold." *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 578, 101 S.Ct. 2925, 2931, 69 L.Ed.2d 856 (1981) ("*Arkla* "); *cf. Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951) (ruling that a pipeline "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms").

Some courts have tried to parse the doctrine by implying that it merely provides that a natural gas company may legally impose no rate other than the one filed with the Commission and that a "corollary" of the doctrine—the rule against retroactive ratemaking—prevents the Commission from permitting a pipeline from raising rates on gas already sold. *See, e.g., Transcontinental Gas Pipe Line Corp. v. FERC,* 54 F.3d 893, 898 (D.C.Cir.1995) ("*Transco* "); *Public Utils. Comm'n of Cal. v. FERC,* 988 F.2d 154, 163-64 (D.C.Cir.1993) ("*CPUC* "); *Associated Gas Distribs. v. FERC,* 898 F.2d 809, 810 (D.C.Cir.1990) (per curiam) (Williams, J., concurring). However, these same courts have conceded that the doctrine and its corollary serve the same purposes and often overlap. *See, e.g., CPUC,* 988 F.2d at 164 n. 2; *Associated Gas Distribs.,* 898 F.2d at 810 (Williams, J., concurring).

We decline to follow this practice. Not only is it unnecessarily confusing and unwieldy, but it has not been adopted by the Supreme Court or the Commission. Indeed,

1

in this lawsuit to support FERC on appeal.[2]  We affirm.

I

Given the complexity of this case and the nature of the legal issues it raises, we must set forth its tangled factual and procedural history at length.

In October 1988, TETCO applied for a certificate of public convenience and necessity under § 7 of the Natural Gas Act ("the NGA").  TETCO sought authority to construct facilities and provide services dealing with the Associated PennEast Customer Group ("APEC") I and III projects, including facilities to provide service under Rate Schedules FTS-4 and FTS-5.  At the same time, three other companies, including Transcontinental Gas Pipe Line Corp. ("Transco"), sought similar authority.

TETCO had previously entered into various service agreements with its customers.  These agreements require the customers to pay TETCO "applicable prices established under [TETCO's] Rate Schedule FTS-4 [and FTS-5] as filed with [FERC], and as same may hereafter be legally amended or superseded."  Apparently, Transco had also entered into similar agreements with certain of its customers.

In their respective applications for a certificate, TETCO and Transco requested, among other things, permission to use a "straight fixed variable" ("SFV") rate design method.  Under SFV, a pipeline typically recovers all of its fixed costs through a demand charge and all of its variable costs through a commodity charge.  Pipeline customers pay the demand charge each month for the right

---

in the orders on review here, the Commission consistently uses the filed-rate doctrine in a way that suggests the doctrine subsumes the rule against retroactive ratemaking.

[2]The intervenors in this case include Public Service Electric and Gas Co. ("PSE & G"), New Jersey Natural Gas Co. ("New Jersey"), Bristol and Warren Gas Co. ("B & W"), Colonial Gas Co. ("Colonial"), Bay State Gas Co., Boston Gas Co., Commonwealth Gas Co., Fall River Gas Co., Northern Utilities, Inc., and The Providence Gas Co.  According to TETCO, only four of the intervenors—PSE & G, New Jersey, B & W, and Colonial—are customers who would be affected by this case.

to receive service and the commodity charge for their actual use of the service.[3] In contrast, TETCO and Transco had previously been using a modified fixed variable ("MFV") rate design for their services and facilities. Under MFV, a pipeline can recover its fixed and variable costs only through commodity charges. In other words, MFV (unlike SFV) only permits a pipeline to recover its fixed costs if its customers actually use the service.

On June 7, 1989, the Commission granted TETCO's application in part. The Commission accorded it certificate authority to provide the FTS-4 and FTS-5 service, however it refused to allow TETCO to use the SFV method. Rather, it only authorized TETCO to use MFV. The Commission, though, was careful to state that it did not necessarily believe that MFV "should or must apply" to TETCO's application for authority to provide "additional services and facilities for any extended period of time." 47 F.E.R.C. ¶ 61,341 (1989). Instead, its decision to opt for MFV "reflects our conclusion that it is appropriate as an initial matter to have consistency between the current rate design utilized on those pipelines and that adopted here for the additional services and facilities...." *Id.*

TETCO did not seek rehearing of this decision. However, Transco, which received a similar ruling to TETCO in the proceeding, did.[4] On June 21, 1991, the Commission granted Transco's request for a rehearing in part. The Commission stated that its decision to grant the request was "based upon our determination that agreements among the pipelines and their customers regarding rate design should be given significant weight." 55 F.E.R.C. ¶ 61,477 (1991). It further noted that there was no evidence that Transco's customers had agreed to SFV "for other than legitimate commercial reasons." *Id.* While the Commission's order did not specify an effective date for SFV, Transco filed tariff sheets to make the design retroactively effective as of the date of initial service

[3]In this case, TETCO sought (and the customers agreed to) SFV with a commodity charge of zero. Thus, the form of SFV at issue here is really a 100 percent demand rate design, that is, one in which TETCO would recover both its fixed and commodity costs through demand charges. For convenience, we will refer to this design as "SFV."

[4]Philadelphia Electric Company, a customer, sought a rehearing on a separate matter. The Commission denied the request.

3

for its new facilities and services.  The Commission accepted the sheets.

After the Commission's decision in favor of Transco, TETCO requested a rehearing of the June 1991 order, arguing that the Commission should have permitted TETCO to use the SFV method, just as it did Transco.[5]

On March 5, 1992, the Commission concluded that not granting TETCO relief in its June 1991 order was perfectly proper, but that it would nevertheless reconsider its June 1989 certificate order and authorize TETCO to use SFV.  The Commission noted that, just like Transco, TETCO and its customers had agreed to SFV, and there was no evidence to suggest that the customers had consented to it for other than legitimate commercial reasons.  Again, the order did not specify an effective date.  In April 1992, TETCO filed tariff sheets, requesting that SFV be retroactively effective as of November 15, 1989, the date of TETCO's initial APEC I service.

Several weeks later, the customers filed a request for "clarification" of the March 1992 order and a protest of the April tariff-sheet filing.  The customers asked that the Commission clarify that the March 1992 order was not retroactive—which they claimed would be violation of the filed-rate doctrine—and that it only permit TETCO's filed tariff sheets to be effective prospectively.

In an order issued June 24, 1993, the Commission rejected the customers' argument that a retroactive change of rates in this matter would violate the filed-rate doctrine.  This is because, the Commission explained, "TETCO proposed the use of the SFV rate design methodology in its original certificate application, reflecting the APEC customers' consent to the use of the SFV method."  63 F.E.R.C. ¶ 61,327 (1993).  Still, the Commission accepted the customers' contention that TETCO's tariff sheets should not be retroactively effective on three grounds.  First, the Commission found that "to accept the SFV rates retroactively in the instant filing effective November 15, 1989 would be inconsistent with the Commission's decisions in the Transco Southern Expansion proceeding, in which the Commission found that it would be inequitable to the Southern Expansion customers to place the

_____

    [5]Algonquin Gas Transmission Co., one of the other parties subject to the June 1989 certificate order, made a similar request for rehearing.

4

revised SFV rates into effect retroactively, as of the date of initial se[6]  Second, the Commission

<hr/>

[6]The Transco Southern Expansion proceeding differs from the APEC I and III proceeding involving Transco.  In the Southern Expansion proceeding, which the Commission found "analogous to this case," the Commission initially rejected Transco's proposed SFV rate design and, in a May 14, 1990 order, required Transco to use SFV.  Transco then requested a rehearing. On July 5, 1991, the Commission reconsidered its May 1990 order and permitted Transco to use SFV.  Transco then filed tariff sheets implementing SFV effective as of November 1, 1990, the initial date of service, and these were accepted by the Commission.  After Transco's customers filed a protest, the Commission changed the effective date for SFV to July 5, 1991, the date the Commission, on rehearing, authorized Transco to use SFV.  In doing so, the Commission rejected Transco's arguments that its customers had had notice that SFV rates might be retroactively applied to them.  The parties filed more requests for rehearing on the effective date.  The Commission then moved the effective date up further, to November 1, 1991, exactly a year after the initial date of service.  The Commission did so to avoid prejudicing any seasonal customer.

Transco appealed to the D.C. Circuit.  In its decision, that court began by noting that the Commission's stated rationale in refusing to adopt the 1990 effective date was that such an early date "would defeat the legitimate expectations of those customers ... that limited their use of the service because of the MFV rates on file between the commencement of service and July 5, 1991." *Transco,* 54 F.3d at 899.  The court rejected this explanation, however, pointing out that the Commission never discussed what legitimated these expectations and "never even considered the expectations of customers that used the service heavily, even though they may have done so in reliance on an expectation that ultimately FERC would—as it did—honor the agreement between Transco and its customers." *Id.*  Indeed, the court seemed to conclude that a customer could not reasonably have expected that the Commission's resolution of the SFV/MFV issue would only apply prospectively.  Examining two relevant FERC decisions—*Black Marlin,* 48 F.E.R.C. ¶ 61,024 (1989) and *KN Energy, Inc.,* 50 F.E.R.C. ¶ 61,290 (1990)—the court ruled that these decisions "seemingly" represented a norm that

> where service starts under § 7 before final determination of the rates, the rate finally determined will be applied retroactively to the start of service.  That norm cuts powerfully for finding the rates effective as of November 1, 1990, and against any expectations to the contrary.  The norm makes a good deal of sense, as it means that the "right rate", i.e., whatever rate the Commission lawfully determines to be right, is applied throughout the period despite the Commission's initial uncertainty and delay.  The expectations of those who act in anticipation of the right rate are protected, and they would seem presumptively most deserving.

*Id.*  Still, the court decided to remand because there might be some legitimate reason, not yet articulated, for the Commission to apply MFV rather than SFV to the period from November 1, 1990 to November 1, 1991.

On remand, the Commission found that November 1, 1990 was the most effective date for SFV.  The Commission based this decision on three grounds:  (1) "traditionally when service commences on newly certified NGA section 7 facilities before the Commission makes a final determination on the initial rate, the subsequently determined initial rate applies retroactively to the date service commenced," (2) Transco's request for a rehearing of the Commission's decision to permit it only to impose MFV put the customers on notice that "the MFV issue was still open and subject to change," and (3) the

accepted the customers' statement that they had made purchasing decisions in reliance on the "filed, approved and uncontested" MFV-based initial rates. *Id.* Third, the Commission held that the equities of the case weighed in favor of the customers because they were not aware that TETCO would seek a change in rate design until about twenty months after the initial rates took effect.

TETCO then requested a rehearing. In an August 3, 1995, order, the Commission conceded that "mistakes were made" in both the March 1992 and June 1993 orders. 72 F.E.R.C. ¶ 61,152 (1995). The Commission reiterated its previous determination that TETCO may not impose SFV rates retroactively, however it arrived at this conclusion through a different analysis than before. The Commission noted that, unlike Transco, TETCO had failed to seek timely rehearing of the June 1989 certificate order. Hence, that order became final and nonappealable as applied to TETCO. "Under the filed rate doctrine," the Commission ruled, "final rates approved by the Commission cannot be charged retroactively. Thus, the mere fact that TETCO did not seek rehearing of the original certificate order dictated that a modification in the rate design for TETCO's initial rates would have to be implemented prospectively." *Id.* Citing *Transco,* 54 F.3d 893, as authority, the Commission stated that "where no timely request for rehearing is filed, and thus no notice of a retroactive change is provided, as in this case, the Commission cannot modify the rate design retroactively without violating the filed rate doctrine." 72 F.E.R.C. ¶ 61,152.

TETCO then petitioned for a rehearing of the August 3 order. The Commission summarily denied the request. 73 F.E.R.C. ¶ 61,039 (1995). Now, TETCO seeks review of the last three orders issued by the Commission in this matter: (1) the June 24, 1993 order, published at 63 F.E.R.C. ¶ 61,327; (2) the August 3, 1995 order, published at 72 F.E.R.C. ¶ 61,152; and (3) the October 5,

---

Commission's order authorizing MFV referred to a Commission policy statement which indicated that "the Commission's policy toward the MFV rate design was in a state of flux at that time and there was a possibility that the Commission would reconsider its decision on rehearing," which put the customers on notice that they would assume some risk in basing purchasing decisions on the MFV rate. 73 F.E.R.C. ¶ 61,077.

1995 order, published at 73 F.E.R.C. ¶ 61,039.[7]

## II

We have jurisdiction over this case under 15 U.S.C. § 717r(b).[8]  While we may affirm, modify, or set aside in whole or part any Commission order upon which an aggrieved party has sought review, *id.,* we must uphold FERC's orders unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive."[9]  15 U.S.C. § 717r(b);  *see also* 5 U.S.C. § 706(2)(E) (stating that a court shall set aside agency findings found to be unsupported by substantial evidence).  Moreover, when "Congress has directly spoken to the precise question at issue," a reviewing court must respect the legislators' decision;  where a statute is "silent or ambiguous," though, the court must accept any reasonable interpretation by the agency to which Congress has entrusted the statute's administration.  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

On appeal, TETCO alleges a number of errors, which can be grouped in three categories.  First, TETCO argues that the Commission erred by applying the filed-rate doctrine.  It contends that this doctrine cannot be applied in a proceeding to set certificate rates under § 7 of the NGA.  Alternatively, it avers that, even if the doctrine could apply in a § 7 proceeding, it did not apply in this one because the MFV-based initial rates permitted by the June 1989 order were provisional and the customers had adequate notice that the Commission might permit SFV-based initial rates.  Second,

---

[7]TETCO is not permitted to seek review of the October 1995 order because it did not seek rehearing of it.  *See* 15 U.S.C. § 717r(a) ("No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon.").

[8]This section provides that "[a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business...."  Texas Eastern is based in this circuit.

[9]In certain circumstances, parties may request leave from the court to adduce additional evidence.  15 U.S.C. § 717r(b).  None has done so here.

7

TETCO claims that the Commission erred in finding in the August 1995 order that its decision would not change the parties' financial positions. Third, it maintains that the Commission erred in its June 1993 order by entertaining the customers' "Request for Clarification" of the March 1992 order, and erred in both its June 1993 and August 1995 orders by effectively negating the March 1992 order.

III

A

Section 7 of the NGA requires pipelines to obtain a certificate of public convenience and necessity from the Commission for, among other things, the construction and extension of natural gas facilities. It also confers on the Commission the power to "attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require." 15 U.S.C. § 717f(e). Sections 4 and 5 of the NGA generally govern rates and charges. Section 4 of the NGA provides that natural gas rates be just and reasonable, that natural gas companies file with the Commission schedules showing their rates for transporting or selling natural gas, that no natural gas company can change its rates without first giving the Commission and the public thirty days' notice, and that the Commission may hold hearings on the lawfulness of the rates in any new schedule filed. Section 5 allows the Commission, after a hearing, to determine that a rate is unjust, unreasonable, unduly discriminatory, or preferential and then to calculate a just and reasonable rate. The section also provides that the Commission may not increase a rate in a schedule on file with it, unless this increase accords with a new schedule filed by the affected natural gas company, but may order a decrease where "existing rates are unjust, unduly discriminatory, preferential, otherwise unlawful, or are not the lowest reasonable rates." 15 U.S.C. § 717d(a).

TETCO acknowledges that the filed-rate doctrine has been uniformly applied to proceedings under §§ 4 and 5 of the NGA, but asserts that it "cannot" be applied to a proceeding under § 7, such as this one. In support of this claim, TETCO offers a convoluted argument based on what it claims is industry practice. TETCO asserts that, when pipelines enter into agreements with their customers

8

about rates before proceeding under § 4 or § 7, agreements about proposed § 4 rate change § 7 initial rates. Because there is more need for the filed-rate doctrine to protect customers against unanticipated rate changes than unexpected initial rates, TETCO maintains, the filed-rate doctrine only applies in § 4 (or § 5) proceedings.

This contention is incorrect for several reasons. First, the fact that the filed-rate doctrine may be *less* needed to ensure adequate notice in § 7 proceedings than in § 4 ones does not mean that it is *never* needed in § 7 proceedings. If customers truly have sufficient notice of initial rates through, say, preexisting agreements, then the doctrine will not apply. If they lack sufficient notice, the doctrine will apply.

Second, TETCO erroneously assumes that the *only* policy behind the filed-rate doctrine is ensuring that pipeline customers receive advance notice of new rates. However, other rationales for the doctrine exist. *See Nantahala Power and Light Co. v. Thornburg,* 476 U.S. 953, 965, 106 S.Ct. 2349, 2356, 90 L.Ed.2d 943 (1986) (suggesting that doctrine ensures that interstate rates filed with FERC are given binding effect by state utility commissions in determining intrastate rates); *Arkla,* 453 U.S. at 582, 101 S.Ct. at 2933 (stating that purpose of doctrine is "granting the Commission an opportunity in every case to judge the reasonableness of the rate"); *cf. Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 126, 110 S.Ct. 2759, 2765-66, 111 L.Ed.2d 94 (1990) (noting that under Interstate Commerce Act, doctrine helps prevent unjust discrimination). While the policy of ensuring that customers have adequate notice may be less necessary in § 7 proceedings than § 4 ones, these other purposes are furthered by the filed-rate doctrine regardless of whether initial rates or rate changes are involved.

Third, TETCO's argument finds no support in the case law. To our knowledge, no court has refused to apply the filed-rate doctrine because the rates involved happened to be initial ones, and at least one court has used the doctrine in just such a circumstance. In *Transco,* which also involved a § 7 proceeding and has very similar facts to this case, the D.C. Circuit explicitly found that the filed-rate doctrine did not apply because the customers had adequate notice of the proposed rates

9

from the outset, *not* because the case involved initial rates rather than rate changes.[10]

In any event, the text of the NGA provides little, if any, guidance on whether the filed-rate doctrine applies in § 7 proceedings. The Commission has decided that it applies in this case. Following *Chevron,* we find that the Commission's decision to invoke the filed-rate doctrine in a § 7 proceeding is reasonable.

B

TETCO next argues that, even if the filed-rate doctrine does apply in a § 7 proceeding, the Commission erred by employing it here. It claims that the filed-rate doctrine may be "overcome" or "waived" by adequate notice to the customers that different rates may be charged.[11] In this case, it suggests, the customers had adequate notice because they specifically consented to SFV in agreements with TETCO prior to TETCO's § 7 filing and because the Commission's June 1989 certificate order raised the possibility that the Commission might permit such rates.

The customers' agreements with TETCO apparently obligated them to pay "applicable prices established under [TETCO's] Rate Schedule FTS-4 [and FTS-5] as filed with [FERC], and as same may be legally amended or superseded." While the Commission disputes on appeal that this language bound the customers to SFV, we believe that it did, at least initially. For instance, in the March 1992 order, the Commission itself found that the customers had "agreed to" the proposed SFV rate design, 52 F.E.R.C. ¶ 61,254, and in the June 1993 order, it determined that the customers "agreed to, and supported" SFV "at the outset of the proceeding." 63 F.E.R.C. ¶ 61,327. Second, the customers

---

[10]There is also a rather peculiar case in this circuit involving a § 7 certificate *and* rate increases. In *Mobil Exploration and Producing North America, Inc. v. FERC,* 881 F.2d 193 (5th Cir.1989), we held that the Commission did not misapply the filed-rate doctrine by exercising its discretion (1) to permit successors to gas-selling predecessors to collect from customers the rate in effect on the date of transfer of the interest in the gas-producing property during the time period between that date and the date they filed to succeed to the predecessors' § 7 certificate but (2) not to permit the successors to keep the rate increases they collected during this time period. We did not state whether this was a § 7 or a § 4 case. It is probably both.

[11]The filed-rate doctrine is not overcome or waived. *See Columbia Gas Transmission Corp. v. FERC,* 895 F.2d 791, 797 (D.C.Cir.) ("*Columbia II* "), *cert. denied,* 498 U.S. 907, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990) ("[W]e have found no support for the Commission's contention that ... it has the authority ... to waive the filed rate doctrine."). Either it applies or it does not.

10

concede in their brief that they agreed to SFV "as originally proposed."

Although the customers' agreements put them on notice of the possibility that the Commission might authorize SFV-based initial rates, the Commission did not permit such rates. Rather, it decided that TETCO should use MFV instead. TETCO then failed to seek a rehearing, so the Commission's decision became final as to TETCO. Subsequently, the Commission unilaterally reconsidered its June 1989 order authorizing MFV and concluded that TETCO could use SFV.[12] Still later, it determined that TETCO could not impose SFV retroactively. The Commission reasoned that the June 1989 order imposing MFV was final, and that, "[u]nder the filed rate doctrine, final rates approved by the Commission cannot be changed retroactively. Thus, the mere fact that TETCO did not seek rehearing of the original certificate order [imposing MFV] dictated that a modification in the rate design for TETCO's initial rates would have to be implemented prospectively." 72 F.E.R.C. ¶ 61,152.

The Commission relied heavily on *Transco,* 54 F.3d 893, which held that the filed-rate doctrine did not bar moving back the effective date of SFV to the date of service. The Commission asserted that the fact that Transco (unlike TETCO) sought timely rehearing of the order imposing MFV "appeared to be critical" to the court's ruling.[13] It stated that the court's "reasoning implies that

---

[12]While the fact that the Commission reconsidered and modified its earlier "final" order may make it seem less final, the Commission remains procedurally free to do so. 15 U.S.C. § 717r(a) provides that

> [u]ntil the record in a proceeding shall have been filed in a court of appeals ... the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

In *Tennessee Gas Pipeline Co. v. FERC,* 871 F.2d 1099 (D.C.Cir.1989), for instance, the court held that the Commission could modify an order in response to an untimely "Motion for Clarification."

[13]The court ruled that "none of the possible outcomes [in the case] involves the sort of "retroactive ratemaking' that is forbidden under the rule against retroactive ratemaking, a corollary of the filed rate doctrine. Transco's petition for rehearing of the initial MFV order put customers on notice that the SFV methodology might ultimately prevail, and such notice "changes what would be purely retroactive ratemaking into a functionally prospective process by placing the relevant audience on notice at the outset that the rates being promulgated are provisional only and subject to later revision.' " *Transco,* 54 F.3d at 898 (quoting *CPUC,* 988 F.2d at 164).

11

where no timely request for rehearing is filed, and thus no notice of a retroactive change is provided, as in this case, the Commission cannot modify the rate design retroactively without violating the filed rate doctrine." 72 F.E.R.C. at 61,767. The Commission also noted that this holding mooted its March 5, 1992 order permitting TETCO to use SFV because the MFV rates to which the March 5 order pertained were only in effect until November 30, 1990.

In understanding the Commission's conclusion, it is important to grasp the scope of the filed-rate doctrine. This doctrine generally holds that "once a rate is in place with ostensibly full legal effect and is not made provisional, it can then be changed only prospectively." *Columbia II,* 895 F.2d at 797. However, the doctrine normally does not apply where the parties enter into preexisting agreements on proposed rates. Such agreements provide the requisite notice and "change[ ] what would be purely retroactive ratemaking into a functionally prospective process by placing the relevant audience on notice at the outset that the rates being promulgated are provisional only and subject to later revision." *Id.*

Thus, the Commission's conclusion in its August 1995 order really has two parts. First, it determined that the filed-rate doctrine applied here because the notice provided by the agreements no longer mattered. The fact that the parties had earlier agreed to SFV-based initial rates was irrelevant because the Commission determined that TETCO could only impose MFV-based initial rates *and* TETCO did not seek rehearing of the Commission's decision; the MFV-based initial rates became final. Second, it found that the customers, faced with *final* MFV-based initial rates, could not have reasonably anticipated that the Commission would later unilaterally authorize TETCO to use SFV for the initial rates. Thus, the customers lacked adequate notice of the possi rates could not be imposed except in violation of the filed-rate doctrine.

In reviewing the Commission's decision, we must recognize the unusual nature of this case. Unlike any other we have found, it involves a situation where customers initially had notice of the possibility of certain rates through preexisting agreements but then arguably "lost" this notice when a final Commission order authorized different rates. None of the cases we have examined in which

12

the court found adequate notice (such as those with agreements to higher rates) involves notice broken by a final Commission order. *See Transco,* 54 F.3d at 898 (finding that, where pipeline and customers entered into agreements in which SFV could be imposed but Commission granted certificate rejecting SFV in favor of MFV, pipeline's request for rehearing of certificate put customers on notice that SFV might ultimately prevail); *Gulf States Utils., Co. v. FERC,* 1 F.3d 288, 292 (5th Cir.1993) (ruling that customer not only had actual notice of rate increases through various filings by pipeline, but the proposed changes are provided for by an agreement between the parties); *CPUC,* 988 F.2d at 166 (stating that customers had adequate notice that the pipeline's certificate conditions were subject to change through the pipeline's petition for rehearing on an exclusivity provision, its judicial appeal of a sunset provision, and through Commission's record of granting take-or-pay charges); *ConEd,* 958 F.2d at 434-35 (noting that customers had adequate notice from the pipeline's request for a retroactive effective date and Commission's record of granting such requests); *Hall v. FERC,* 691 F.2d 1184, 1192 (5th Cir.1982) (after timely appeal and lengthy related litigation in FERC and federal court, reversing Commission because it wrongly applied filed-rate doctrine to bar an increase in rates the parties had previously authorized in a contract), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983); *City of Piqua v. FERC,* 610 F.2d 950, 954-55 (D.C.Cir.1979) (affirming Commission's refusal to apply filed-rate doctrine under Federal Power Act since the rate change was prospective from the date of the contract in which the parties agreed to this rate change).

Conversely, in the cases we have seen involving inadequate notice, there has been no preexisting agreement to a rate change and/or no adequate notice of a rate change from the Commission. *See Transwestern Pipeline Co. v. FERC,* 897 F.2d 570, 579-81 (D.C.Cir.) (where Commission did not apply filed-rate doctrine to bar pipeline's collection of certain balances from customers because they had adequate notice, rejecting Commission's argument that preamble to regulations suggested policy of assuring pipelines' recovery of all purchased gas costs because such "notice" was inadequate and rebuffing Commission's contention that two FERC decisions allowed recovery of balances in similar circumstances because these decisions did not involve the pipeline's

particular system), *cert. denied,* 498 U.S. 952, 111 S.Ct. 373, 112 L.Ed.2d 335 (1990); *Columbia II,* 895 F.2d at 797 (holding that, in the absence of adequate notice from the Commission or any preexisting agreements to rate change, the Commission was barred by the filed-rate doctrine from permitting a surcharge on gas already sold); *Columbia Gas Transmission Corp. v. FERC,* 831 F.2d 1135, 1138 (D.C.Cir.1987) ("*Columbia I* ") (ruling that, where Commission issued order informing gas producers that it intended to allow them to pass along certain costs to their "first purchasers," these first purchasers could not pass these costs along to "downstream purchasers" because the downstream purchasers were not the "audience" for the order and thus lacked adequate notice); *Gillring Oil Co. v. FERC,* 566 F.2d 1323 (5th Cir.) (in which, according to *Hall,* 691 F.2d at 1191, the pipeline "sought a rate higher than that ever filed with the Commission or contemplated by the rate schedule/contract. A purer example of an action for a retroactive rate increase would be difficult to imagine."), *cert. denied,* 493 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115 (1978).

1

 TETCO first argues that the MFV-rates were not final, but provisional. It relies on various statements in the June 1989 certificate order suggesting that the Commission was not particularly wedded to MFV and would revisit the SFV/MFV issue. The order noted, for instance, that

> [w]e emphasize that our approval of the initial rates herein does not constitute an endorsement of any underlying rate methodology, principle, or concept. In particular, we recognize that we are requiring the use of MFV rate design in lieu of methods proposed by Texas Eastern ... even though the [Commission's May 30, 1989 *Policy Statement Providing Guidance With Respect to The Designing of Rates* ] indicated that, "[t]he Commission is concerned that MFV may be outdated in light of the significant changes in the nature of the gas pipeline industry...."

47 F.E.R.C. ¶ 61,341. It also stated that

> [o]ur decision here to require MFV reflects our conclusion that it is appropriate as an initial matter to have consistency between the current rate design utilized on those pipelines and that adopted here for the additional services and facilities, pending subsequent application of the policy statement to those pipelines, rather than any conclusion that the MFV for some reason should or must apply separately to these additional services and facilities for any extended period of time. Additionally, when the rates of these pipeline companies are next reviewed in a section 4 or 5 proceeding, the participants to those proceedings, including the Commission staff, must adhere to the guidance and direction of the policy statement and direction of the policy statement and develop a record consistent with the content of the policy statement in all particulars.

14

*Id.* While this language is perhaps less precise than it should be, we do not think that the Commission intended these statements to indicate that the *initial* rates were provisional. Rather, the Commission meant that, just because the initial rates were based on MFV, TETCO would not be precluded from seeking Commission approval in a § 4 or § 5 proceeding for *future* SFV-based rates.

Once the Commission approves initial rates, they generally stay in effect until a pipeline files for a change in the rates in a § 4 proceeding and the Commission determines that this change is just and reasonable. *See, e.g., Texas-Ohio Pipeline, Inc.,* 69 F.E.R.C. ¶ 61,145 ("The rates approved herein are initial rates under NGA section 7.... These initial rates will remain in effect until such time as Texas-Ohio files an NGA section 4 general rate proceeding...."). If the Commission wishes to make rates provisional, it will expressly condition them as such. *See, e.g., Texas E. Transmission Corp.,* 51 F.E.R.C. ¶ 61,384 (1990) ("Texas Eastern's rates are placed into effect subject to refund, which will protect Brooklyn Union, should it ultimately prevail."). If the Commission expressly permits higher rates on some condition and that circumstance comes to pass, the Commission may not refuse to permit the higher rates on the grounds of the filed-rate doctrine. *See Natural Gas Clearinghouse v. FERC,* 965 F.2d 1066, 1074 (D.C.Cir.1992) (noting that Commission adopted pipeline's express reservation allowing it the right to seek a surcharge "subject to" a pending rate challenge, and that, once the pipeline won the challenge, this surcharge could be imposed even on gas already sold).

We do not view the Commission's general statements about SFV and MFV as expressly conditioning its determination that TETCO can only impose SFV-based initial rates. Similar statements can be found in other orders, and largely amount to general notice that the Commission may permit *future* rates to be based on SFV.[14] In fact, the Commission has stated that any changes in rate design based on the policy statement

will be effective prospectively from the date of a final Commission order on the issue in the

---

[14]For examples of such boiler plate notice, see, for example, *CNG Transmission Corp.,* 51 F.E.R.C. ¶ 61,267, *Tennessee Gas Pipeline Co.,* 51 F.E.R.C. ¶ 61,113, and *National Fuel Gas Supply Corp.,* 48 F.E.R.C. ¶ 61,121.

> individual proceeding. This is because one of the Commission's objectives is to design rates that give pricing signals that will affect current behavior. This purpose is not achieved by retroactive price adjustments.

*Interstate Natural Gas Pipeline Rate Design,* 48 F.E.R.C. ¶ 61,122 (1989).

It is certainly true that the MFV-based rates set forth in the June 1989 certificate order could not be considered "final" if TETCO—like Transco—had requested a rehearing and then, if necessary, had sought further review. However, TETCO did not do so. Thus, TETCO must evidently be arguing here that the Commission, using the language quoted at the beginning of this section, expressly conditioned its imposition of MFV-based rates by putting the parties on notice that it might in the future unilaterally require these rates to be based on SFV. This is wholly unpersuasive. Moreover, the Commission's interpretation of its own certificate is entitled to considerable deference. *See Mitchell Energy Corp. v. FERC,* 651 F.2d 414, 417 n. 9 (5th Cir.1981) ("The Commission's construction of its certificates is entitled to great weight and commensurate deference."). The Commission's finding that the MFV-rates in its June 1989 certificate order were final is not arbitrary or capricious, and is supported by substantial evidence.

2

TETCO next contends that the customers had adequate notice that the Commission might permit SFV. TETCO argues that the Commission erred by finding that, because TETCO failed to ask for a rehearing after the June 1989 certificate order, the customers had no notice that they might face SFV-based initial rates. Moreover, it suggests that the agreements and the June 1989 certificate order itself provide adequate notice of such a possibility.

The Commission determined that the "mere fact" that TETCO failed to file a timely petition for rehearing of the June 1989 certificate order meant that its request to apply SFV to the initial rates would violate the filed-rate doctrine. Apparently, the Commission interpreted *Transco* as standing for the proposition that, once an order allowing MFV becomes final, the customers have "no notice" of the possibility of SFV.

We believe that this discussion is misleading. *Transco* simply observed that a petition for

rehearing can put customers on notice that SFV "might ultimately prevail." *Transco,* 54 F.3d at 898. It did not suggest that a rehearing request was the *only* means to ensure notice in such a situation. If this were so, rates could only be increased starting from the date the request was filed, not, for example, from the date set forth in a preexisting contract. This is not the law. *Transco* as well as *CPUC, Columbia II, Consolidated Edison Co. of N.Y., Inc. v. FERC,* 958 F.2d 429 (D.C.Cir.1992) ("*ConEd* "), and other cases make clear that the Commission must look for adequate notice from a variety of sources, including agreements with customers and Commission orders. *See CPUC,* 988 F.2d at 216 (stating that, when determining whether Commission order violates the filed-rate doctrine, the court "inquires whether, as a practical matter, the purchasers of the gas ... had sufficient notice that the approved rate was subject to change"); *ConEd,* 958 F.2d at 434 (ruling that where p is adequately served); *Columbia II,* 895 F.2d at 796-97 (noting that Commission itself can put parties on notice that the rates they will be paying are subject to retroactive adjustment at a later date). Moreover, it is certainly *arguable* here that, given the fact that the June 1989 certificate order was final, the customers had notice that the Commission might unilaterally decide to allow such rates later. Hence, we will examine whether the customers received notice of this possibility from either of the two sources TETCO cites, the certificate order itself and the agreements.

TETCO claims that the certificate order put the customers on notice of the possibility that the Commission might permit SFV-based initial rates. It points to the Commission's various comments in the order suggesting that the SFV/MFV issue was in flux. However, we do not believe that these remarks put the customers on notice that the Commission would permit TETCO to apply SFV to the initial rates after these rates became final. Rather, the Commission merely signaled that it might allow TETCO to use SFV in some later § 4 or § 5 proceeding (or on rehearing), or that the Commission might itself endorse SFV in the future. We believe that, after the certificate became final, the customers would have been surprised if the Commission had authorized SFV-based initial rates. *See Gulf States,* 1 F.3d at 292-93 ("Not only did [the customer] have actual notice of increases in [a factor used to calculate an equalization charge], but there appears to be no dispute that the proposed

changes are provided for by the ... agreement.... In short, the filing [for a rate increase] could not have come as a surprise" to the customer.). These vague, ambiguous policy statements are simply not up to the task of providing adequate notice. *Cf. Transwestern,* 897 F.2d at 580 (finding that preamble to regulations asserting purpose of assuring pipelines the recovery of all purchased gas costs did not provide customers with adequate notice that a pipeline could recover costs from a customer after the system governed by the regulations ended, and noting that "the Commission's assertion of a policy goal in one context is hardly the same as a rule implementing that goal in every other context").

Next, TETCO contends that the parties' agreements provided adequate notice of SFV. As support, it points to various cases in which courts have held that the parties' agreement to a particular rate "overcomes" the filed-rate doctrine. These include a Fifth Circuit case, *Hall,* as well as a number of D.C. Circuit cases, *ConEd, CPUC, Natural Gas Clearinghouse, Columbia II,* and *Piqua.*[15] We agree that, under these cases, the contracts provided notice to the customers that the Commission might impose SFV. We note, though, that in each of these cases, the aggrieved party sought rehearing of the order permitting or refusing to permit higher rates. In other words, these orders never became final, at least until the parties exhausted the appeals process. In this case, though, once TETCO failed to request a rehearing of the June 1989 certificate order, that order did become final.

Once the certificate order became final, it would certainly be reasonable for the customers to assume that the Commission would not unilaterally revisit the order and impose SFV-based initial rates.[16] "[A] certificate supersedes any contract to the contrary." *Columbia Gas Transmission Corp. v. FERC,* 750 F.2d 105, 110 (D.C.Cir.1984). Moreover, "[b]y accepting a certificate of public

[15]We note that the D.C. Circuit cases, unlike *Hall* and this case, all involved an argument that the Commission *violated* the filed-rate doctrine, rather than the claim that it should not have *applied* it. However, we do not believe that this difference affects our analysis of adequate notice.

[16]True, the agreements provide that the customers would pay SFV-based rates as filed with FERC, "and as same may hereafter be legally amended or superseded." But since the Commission has rejected SFV-based initial rates in this case and they have never gone into effect, this provision does not control.

convenience and necessity a gas company agrees to perform the service authorized therein, even if that service is not required by the underlying contract." *Mitchell,* 651 F.2d at 417. Thus, while the agreements originally provided the customers with notice of the possibility of SFV-based initial rates, once the MFV-based initial rates became final, this notice "vanished."[17]

While TETCO only indirectly raises the issue, we also do not believe that the Commission had any record of unilaterally substituting rate designs and imposing them retroactively on customers, and thus do not believe that the customers could have received notice from any Commission practice. *See CPUC,* 988 F.2d at 166 (stating that Commission's record of granting take-or-pay charges was a factor providing notice that pipeline's certificate conditions were subject to change); *ConEd,* 958 F.2d at 434-35 (noting that Commission's record of granting requests for retroactive effective dates was a factor giving notice). In fact, as discussed above, the Commission has explicitly stated in the context of the policy statement that it would not retroactively impose a new rate design. *Interstate Natural Gas Pipeline Rate Design,* 48 F.E.R.C. ¶ 61,122.

We also think it is important here that the customers in this case had no notice during much of the period when they were making purchasing decisions involving the initial rates. A major underlying purpose of the filed-rate doctrine is predictability. *Towns of Concord v. FERC,* 955 F.2d 67, 75 (D.C.Cir.1992). It permits "purchasers of gas to know the consequences of the purchasing decisions they make." *Id.* Moreover, a principal purpose of the filing provisions of NGA is to give advance notice of proposed rate changes to the customer. *Cf. Union Tex. Prods. Corp. v. FERC,* 899 F.2d 432, 433 (5th Cir.1990) (same with regard to Federal Power Act); *see also ConEd,* 958 F.2d at 434 n. 7 ("Noting the identical language and purposes of the Federal Power Act and Natural Gas Act notice provisions, the Supreme Court has cited them interchangeably.") (citing *Arkla,* 433

---

[17]It is true, however, that two or three years later the customers again became aware that TETCO wanted the Commission to allow it to impose SFV-based initial rates. In July 1991, for example, TETCO sought rehearing of the Commission's June 1991 rehearing order permitting Transco to use SFV, and asked the Commission to grant it the same relief as Transco. However, such belated notice is irrelevant. Relying on the final MFV-based initial rates, the customers had already made their purchasing decisions for the period in which the initial rates were in effect.

U.S. at 577 n. 7, 101 S.Ct. at 2930 n. 7).

In a typical § 7 situation, parties agree on a particular service and on proposed rates, the service begins, and the Commission decides whether to allow the service and what the rates will be. The "norm" in such a situation is that the Commission's "finally determined rate" will be applied starting from the date of initial service. *Transco,* 54 F.3d at 899. This is because the parties' agreements precede the date of initial service and thus the customers are "on notice [about this increase] from the outset." *CPUC,* 988 F.2d at 164. Such a "retroactive" increase does not violate the filed-rate doctrine because the customer knows from the agreements that it may face SFV and thus canificant that the customers only had notice of the possibility of SFV-based initial rates from the date of the agreements to about five months *before* the initial date of service (i.e., the date when the initial rates began to accrue) and then again, at the earliest, some twenty months *after* the initial rates were superseded by new rates.[18] Therefore, the customers lacked notice of the possibility of SFV-based initial rates when they were making purchasing decisions based on the final MFV-based initial rates. In other words, as the Commission found in its June 1993 order, the customers must have relied—and quite reasonably—on the finality of the June 1989 certificate order (rather than on the agreements to which the Commission did not give effect) to try to calculate the consequences of their purchasing decisions.[19] The filed-rate doctrine exists to provide just this sort of predictability.

---

[18]TETCO suggests that the fact that *Transco* sought rehearing of the June 1989 certificate order should have put the customers on notice that the Commission might permit *TETCO* to impose SFV-based initial rates. However, like the downstream purchasers in *Columbia I,* TETCO's customers were simply not the appropriate audience for Transco's rehearing petition. *See also CPUC,* 988 F.2d at 164 (stating that "relevant audience" must be placed on notice). Where both Transco and TETCO had the right to seek rehearing of the certificate, and only Transco exercised that right, TETCO's customers would hardly expect that the Commission might modify the certificate as to TETCO.

[19]In *Transco,* the court found that the Commission erred in determining that allowing SFV-based initial rates would "defeat the legitimate expectations" of various customers because "the Commission never explained what legitimated those expectations" and it never considered the expectations of customers who might have relied on the agreements. *Transco,* 54 F.3d at 899.

In this case, though, permitting SFV-based initial rates *would* defeat the customers' legitimate expectations. The Commission properly found that the customers lacked

20

It seeks to prevent customers from relying on certain rates, only to find later that their purchasing decisions have been upset and their costs increased.[20]

In sum, we find that the customers lacked adequate notice that the Commission would unilaterally authorize SFV-based initial rates and that, while the customers may have *originally* had adequate notice of possible SFV-initial rates, they lacked adequate notice during the time it mattered. Therefore, we determine that the Commission's finding that the customers did not have adequate notice is not arbitrary, capricious, or lacking substantial evidence.

Accordingly, given our conclusion that the Commission did not err in finding that the MFV-based initial rates in the June 1989 certificate order were final and did not err in finding that the customers lacked adequate notice of the possibility of SFV-based initial rates, we affirm the Commission's decision to apply the filed-rate doctrine in its August 1995 order.

IV

TETCO also argues that the Commission erred in finding in its August 1995 order that "[c]hanging our prior authorization [of SFV in the March 1992 order] does not actually change the financial position of any of the parties. While TETCO's expectations are left unmet, reversing our 1992 decision now leaves TETCO in exactly the same position it was in prior to that order." 72 F.E.R.C. ¶ 61,152.

As the Commission conceded in its August 1995 order, the March 1992 order did not specify

---

adequate notice of the possibility of SFV-based initial rates because TETCO failed to request rehearing of the June 1989 certificate order. Surely, customers would legitimately expect that they could rely on a final order of the Commission in making their purchasing decisions. We cannot reasonably assume that customers will base their purchasing decisions on the possibility that the Commission will unilaterally modify a final order governing those decisions.

[20]As public utilities, the customers must try to keep their gas purchasing and transportation costs as low as possible. Relying on MFV, the customers would have compared TETCO's commodity charges to its competitors and chosen the pipeline with the lowest ones. Alternatively, relying on SFV—a 100 percent demand charge—the customers would have wanted TETCO to meet as much of their supply needs as possible. Thus, imposing SFV-based initial rates after the period in which initial rates were in effect would overturn the customers' least-cost purchasing decisions and raise their expenses.

whether TETCO could charge SFV rates on a retroactive or prospective basis. However, when TETCO filed tariff sheets in April 1992 that would allow it to impose SFV rates retroactively, the Commission rejected them in its June 1993 order. Thus, the March 1992 order never went into effect, and no final order existed permitting TETCO to charge SFV-based initial rates. In comparison, in the August 1995 order, the Commission noted that the March 1992 order, while unclear, could only have had retrospective effect because new rates superseded the initial rates on December 1, 1990. The Commission then ruled that the filed-rate doctrine barred it from permitting TETCO to charge such retrospective rates. Thus, TETCO *is* in exactly the same position now as it was before the March 1992 order; it still must use MFV-based initial rates. Accordingly, the Commission's finding that the March 1992 order did not change the parties' financial position is not arbitrary, capricious, or lacking substantial evidence.

V

TETCO contends that the Commission erred in its June 1993 order by considering the customers' untimely "Request for Clarification" of the March 1992 order, and then erred in the June 1993 and August 1995 orders by effectively negating the March 1992 order.

As discussed above, 15 U.S.C. § 717r(a) confers broad power on the Commission to reconsider, modify, and even set aside any order issued under the NGA. It states that

> [u]ntil the record in a proceeding shall have been filed in a court of appeals ... the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

Whether the Commission reconsiders and changes one of its orders *sua sponte* or in response to a belated suggestion from a party is irrelevant. In *Tennessee Gas Pipeline Co.,* 871 F.2d 1099 (D.C.Cir.1989), for instance, the court held that the Commission could modify an order in response to an untimely "Motion for Clarification."

It is true that, in its June 1993 order, the Commission "clarified" its March 1992 order in a way that effectively overruled it. At that time, however, no record had yet been filed with this court, and TETCO had reasonable notice that the Commission might issue such an order given the

22

customers' motion. Thus, the June 1993 order was in no way *procedurally* defective. Similarly, the fact that, in the August 1995 order, the Commission took a "fresh look" at the case and determined that "mistakes were made" in the March 1992 and June 1993 orders is perfectly proper. Also, the fact that it decided to affirm the "result" of the June 1993 order on somewhat different grounds and to reverse explicitly the March 1992 order is likewise permissible.

While we appreciate the parties' confusion in attempting to guide their conduct by orders that the Commission has conceded were "mistake[n]," we hardly think that § 717r(a) precludes the Commission from correcting its errors and clarifying its reasoning.[21]

## VI

For the foregoing reasons, we AFFIRM the judgment of the Commission.

---

[21]TETCO also appears to challenge the substantive findings in the June 1993 order. However, it is unclear what, if any, findings from the June 1993 order survive the August 1995 order. In the later order, the Commission merely stated that it had made unspecified mistakes in the June 1993 order and affirmed its "result" on different grounds.

Because we affirm the Commission's judgment in the August 1995 order, we need not reach the question of whether the Commission erred in making the various specific findings in the June 1993 order.

23