United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 17, 2005**

Charles R. Fulbruge III
Clerk

REVISED JUNE 30, 2005

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————

No. 04-40962

————

TEXAS COMMERCIAL ENERGY, A TEXAS LIMITED LIABILITY COMPANY

Plaintiff-Appellant

versus

TXU ENERGY, INC; ET AL

Defendants

TXU ENERGY INC; TXU GENERATION SERVICES COMPANY LP; TXU PORTFOLIO MANAGEMENT COMPANY LP, formerly known as TXU Energy Trading Company LP; TXU ENERGY SOLUTIONS MANAGEMENT COMPANY, formerly known as TXU Energy Services Co; AMERICAN ELECTRIC POWER INC; AEP TEXAS CENTRAL COMPANY; AEP TEXAS NORTH COMPANY; AMERICAN ELECTRIC POWER SERVICE CORP; AEP TEXAS COMMERCIAL INDUSTRIAL RETAIL LP; RELIANT ENERGY INC; RELIANT RESOURCES INC; RELIANT ENERGY ELECTRIC SOLUTIONS LLC; RELIANT ENERGY RETAIL SERVICES LLC; RELIANT ENERGY SOLUTIONS LLC; AUTOMATED POWER EXCHANGE INC; ELECTRIC RELIABILITY COUNSEL OF TEXAS; TEXAS GENCO LP; CENTERPOINT ENERGY INC; CENTERPOINT ENERGY HOUSTON ELECTRIC LLC; TEXAS INDEPENDENT ENERGY LP; ODESSA-ECTOR POWER PARTNERS LLP; GUADALUPE POWER PARTNERS LLP; TRACTEBEL ENERGY MARKETING, INC.

Defendants-Appellees

Before GARZA and BENAVIDES, Circuit Judges.[*]

EMILIO M. GARZA, Circuit Judge.

Texas Commercial Energy ("TCE"), an energy retailer, appeals the district court's dismissal of its lawsuit against TXU Energy, Inc. ("TXU"), a generator of electric power, and twenty-three other defendants. TCE argues that the district court erred by applying the filed rate doctrine to preclude it from recovering damages it sustained when TXU allegedly manipulated its market position to create substantial price increases in the short-term energy market.

I

Texas deregulated its energy market in 1999 with the passage of Senate Bill 7. Act of May 27, 1999, 76th Leg., R.S., ch. 405, 1999 Tex. Gen. Laws 2543. Bill 7 amended the Public Utility Regulatory Act ("PURA") and split the state's integrated utilities into three groups: electric generation companies, transmission and distribution companies, and retail electric providers. TEX. UTIL. CODE ANN. § 39.051(b). The statute also gives the Public Utility Commission of Texas ("PUCT") authority to regulate the state's electric grids and to monitor and remedy market power abuses.[1] Specifically, PUCT has broad power to maintain "safe, reliable, and reasonably priced electricity" and to "ensure that ancillary services necessary to facilitate the transmission of electric

---

[*] Judge Garwood recused himself after oral argument in this case. As a result, this opinion is being entered by quorum pursuant to 28 U.S.C. § 46.

[1] Texas' electrical system is independent from the rest of the United States' which is administered through the Federal Energy Regulatory Commission ("FERC"). PUCT fulfills a similar role as FERC.

energy are available at reasonable prices with terms and conditions that are not unreasonably preferential, prejudicial, discriminatory, predatory, or anticompetitive." TEX. UTIL. CODE ANN. §§ 39.101(a)(1), 35.004(e). PUCT is also empowered to remedy market abuses by "seeking an injunction or civil penalties as necessary to eliminate or to remedy the market power abuse or violation as authorized by Chapter 15, by imposing an administrative penalty as authorized by Chapter 15, or by suspending, revoking, or amending a certificate or registration as authorized by Section 39.356." TEX. UTIL. CODE ANN. § 39.157(a).

TCE is a retail electric provider that sells electricity to customers in Texas by entering into bilateral agreements with generators and by purchasing electricity through the ancillary Balancing Energy Service ("BES") market. The BES market is a bid-based wholesale market for short-term electricity power. PUCT contracted with a private organization, the Electric Reliability Council of Texas, Inc. ("ERCOT"), to administer the BES market. Under the terms of the contract, ERCOT was required to ensure system reliability, nondiscriminatory access to transmission and distribution systems, access to market information, and clearance of all market transactions. PUCT also created the Market Oversight Division ("MOD") to ensure general compliance with the requirements of PURA. In 2002, MOD required all participants in the Texas electricity market to file an affidavit with PUCT pledging that they would not engage in market manipulation.

In February 2003, during severe winter weather, the price for electricity on the BES market soared. As a result, TCE was forced to pay considerably higher sums for the energy it had to supply its customers. The resulting losses led TCE to meet with MOD and express their concern that the price spikes were the result of anti-competitive bids and market manipulation. TCE alleged that, at the time of the price fluctuations, TXU controlled anywhere from seventy-five to ninety-nine percent

3

of the BES market and that it used its market strength to purposefully withhold energy from the market in order to increase the price. TCE argues that while ERCOT made some attempts to force TXU to rectify the situation, it failed to follow its own protocols. Due to the mounting losses, TCE was forced to file for Chapter 11 bankruptcy.

TCE filed suit against twenty-four market participants including TXU, its subsidiaries, and ERCOT. According to the complaint, TCE alleges that the defendants violated the federal Sherman Antitrust Act and the Texas Free Enterprise and Antitrust Act ("TFEAA"). TCE also alleges fraud, negligent misrepresentation, breach of contract, defamation, business disparagement, and civil conspiracy. The defendants filed motions to dismiss. After holding a hearing on the motions, the district court dismissed TCE's fraud, negligent misrepresentation, and state and federal antitrust claims on the basis of the filed rate doctrine. The court also dismissed some of the breach of contract and civil conspiracy claims, and denied ERCOT's motion to dismiss the defamation and business disparagement claims. Having dismissed the federal claims, the district court dismissed the entire case, finding that there was no basis for diversity jurisdiction on the remaining state law claims. TCE now appeals the district court's dismissal of its antitrust claims.[2]

II

We review a district court's grant of a motion to dismiss *de novo*. *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41,

---

[2] TCE does not challenge the district court's decision to dismiss their negligent misrepresentation and fraud claims under the filed rate doctrine.

45-46 (1957).

The district court held that, even if the defendants had engaged in market manipulation, the filed rate doctrine precluded TCE from recovering for its losses under federal and state antitrust law. The filed rate doctrine bars judicial recourse against a regulated entity based upon allegations that the entity's "filed rate" is too high, unfair or unlawful. *See*, *e.g.*, *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409 (1986) (filed rate doctrine bars damage action against motor carriers under antitrust laws even though carriers colluded to set artificially high filed rate). The Supreme Court established this doctrine in *Keogh v. Chicago & Northwestern Railway, Co.*, 260 U.S. 156 (1922). In *Keogh*, the Supreme Court held that a shipper could not bring an antitrust action against carriers in connection with tariffs paid because those tariffs had been filed and approved by the Interstate Commerce Commission. *Id*. at 163. The Court reasoned that even if the carriers had conspired to eliminate competition, the shipper could not recover under antitrust law because it could receive a rebate that might give the shipper "preference over his trade competitors." *Id*. Furthermore, the Court held that it was up to the respective governmental agency to determine whether the rates were discriminatory or unlawful, not the courts. *Id*. at 164.

Since *Keogh*, courts have consistently applied the filed rate doctrine in a number of energy cases to preclude lawsuits against companies based on rates that were filed with a government agency. *See*, *e.g.*, *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 578 (1981) (filed rate doctrine prohibits seller of natural gas to collect a rate different than the one it filed with the Federal Power Commission.); *Tex. E. Transmission Corp. v. Fed. Energy Regulatory Comm'n*, 102 F.3d 174, 189 (5th Cir. 1996) (natural gas pipeline precluded from retroactively assessing customer rates based on a new and different rate methodology because the prior rates had been filed with a federal agency).

5

"Simply stated, the doctrine holds that any 'filed rate')) that is, one approved by the governing regulatory agency)) is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland, Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994).

### III

TCE argues that the district court was erroneous in applying the doctrine because: 1) the legislature clearly intended for aggrieved parties to bring private claims under PURA; 2) wholesale energy rates in the BES market are not filed with PUCT; 3) antitrust exemptions should be narrowly construed; and 4) the filed rate doctrine cannot be applied because PURA does not create a substitute damages mechanism.

### A

TCE argues that, under Bill 7, the Texas state legislature expressly intended to allow private antitrust claims to be brought under PURA and that the district court's decision violates "[t]he primary rule in statutory interpretation [) )] that a court must give effect to legislative intent." *In re CPDC, Inc.*, 337 F.3d 436, 442 (5th Cir. 2003) (quoting *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000)). In support, TCE cites to PURA's savings clause which states that "[n]othing in this chapter shall be construed to confer immunity from state or federal antitrust laws. This chapter is intended to complement other state and federal antitrust provisions. Therefore, antitrust remedies may also be sought in state or federal court to remedy anticompetitive activities." TEX. UTIL. CODE ANN. § 39.158(b).

TCE asserts that the application of the filed rate doctrine violates this provision of the statute by conferring immunity on the defendants. In *Square D Co.,* the Supreme Court rejected this position by explicitly stating that the application of the filed rate doctrine "is far different from the creation of

6

an antitrust immunity." 476 U.S. at 422; *see also Wegoland*, 27 F.3d at 22 ("filed rate doctrine does not leave regulated industries immune from suit under the RICO or antitrust statutes."). Rather, as the Court noted, defendants who engage in anticompetitive activities based on filed rates are "still subject to scrutiny under the antitrust laws by the Government and to possible criminal sanctions or equitable relief." *Square D Co.*, 476 U.S. at 422. Moreover, contrary to TCE's assertions, the filed rate doctrine is very much a part of current federal antitrust law. It has been consistently applied as a defense to antitrust actions by various circuits and by the Supreme Court for decades. *Id.* at 423 ("the Keogh rule has been an established guidepost at the intersection of the antitrust and interstate commerce statutory regimes for 6 ½ decades . . . [and is] an essential element of the settled legal context in which Congress has repeatedly acted in this area"). Thus, we find that applying the filed rate doctrine, along with other common-law defenses that are normally part of the federal antitrust legal landscape, gives effect to the legislature's intent to have PURA "complement other state and federal antitrust provisions." TEX. UTIL. CODE ANN. § 39.158(b).

Similarly, TCE's state antitrust arguments)) that applying the filed rate doctrine would displace provisions set out in the TFEAA, or that the filed rate doctrine as a whole does not apply to the TFEAA)) are misplaced. "[C]ourts have uniformly held . . . that the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies." *Wegoland LTD.*, 27 F.3d at 20; *see also H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 494 (8th Cir. 1992) ("the filed rate doctrine applies whether the rate in question is approved by a federal or state agency"); *Taffet v. Southern Co.*, 967 F.2d 1483 (11th Cir. 1992); *Korte v. Allstate Ins. Co.*, 48 F.Supp.2d 647 (E.D.Tex. 1999). Moreover, state antitrust claims do not need to be addressed separately because the TFEAA explicitly "mandates that its provisions be interpreted in harmony with federal antitrust

7

law." *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 n.7 (5th Cir. 1996). Thus, the filed rate doctrine applies with equal force to TCE's state antitrust claims.[3]

B

TCE contends that the filed rate doctrine is inapplicable because PURA does not require rates in the BES market to be filed with PUCT, which does not set or approve these rates. We agree with the approach taken by other circuits who have addressed this issue in the context of rates filed with PUCT's federal counterpart, FERC. In *Town of Norwood, Massachusetts v. New England Power Co.*, the First Circuit concluded that the filed rate doctrine applied to market-based energy rates because FERC was "responsible for ensuring 'just and reasonable' rates and, to that end, wholesale power rates continue to be filed and subject to agency review." 202 F.3d 408, 419 (1st Cir. 2000). The Ninth Circuit echoed this view, noting that while FERC had waived many requirements that it had applied under a cost-based system, the filed rate doctrine continued to apply to market-based energy rates because the agency continued to "oversee wholesale electricity rates . . . by reviewing and approving a variety of documents filed by [market actors]." *Pub. Util. Dist. No. 1 of Snohomish County v. Dynegy Power Marketing, Inc.*, 384 F.3d 756, 760-61 (9th Cir. 2004). Similarly, under Bill 7, PUCT is required to ensure "safe, reliable, and reasonably priced electricity" and "that ancillary services necessary to facilitate the transmission of electric energy are available at reasonable prices with terms and conditions that are not unreasonably preferential, prejudicial, discriminatory,

---

[3] TCE also contends that the district court erred by ruling that only the U.S. Congress has the authority to determine the applicability of the filed rate doctrine and that the doctrine may only be abrogated through an amendment to the Sherman Act. The defendants, however, "do not dispute that the Texas legislature, had it chosen to do so, could have repealed the application of the filed rate doctrine to cases brought under the TFEAA." Since we conclude there is no evidence that the state legislature sought to eliminate this doctrine from state antitrust suits, this argument is moot.

predatory, or anticompetitive." TEX. UTIL. CODE ANN. §§ 39.101(a)(1), 35.004(e). PUCT also requires electricity generators to file detailed information to assess market power and even a market power mitigation plan for those generators that control more than 20% of the electricity market in a specific region. TEX. UTIL. CODE ANN. §§ 39.155-156. Accordingly, PUCT's oversight over the market is sufficient to conclude that the BES energy rates are "filed" within the meaning of the filed rate doctrine.

C

TCE argues that the filed rate doctrine should not be applied because antitrust exemptions should be narrowly construed. It morphs this general assertion into a more specific allegation that its claims are exempt from the filed rate doctrine under the "competitor exception." The competitor exception, which has never been recognized by this court or the Supreme Court, holds that "an anticompetitive practice embodied in a [filed] tariff may [still] violate the antitrust laws if it . . . impacts upon competitors as opposed to customers." *City of Groton v. Conn. Light and Power* Co., 662 F.2d 921, 929 (2d Cir. 1981); *see also Utilimax.com, Inc. v. PPL Energy, LLC*, 378 F.3d 303, 307 (3d Cir. 2004) (competitor exception exists "because competitors are not the intended beneficiaries of that rule of public utility regulation") (quoting *Essential Communications Sys. v. Am. Telephone & Telegraph Co.*, 610 F.2d 1114, 1121 (3d Cir. 1979)). *But cf. Pinney Dock & Transp. Co. v. Penn Central Corp.*, 838 F.2d 1445-47 (6th Cir. 1988) (rejecting competitor exception).

Assuming, without deciding, that such an exception exists, we find that the competitor exception is not applicable to this case. TXU has affiliated retail electric providers as part of its subsidiaries. However, TCE is not a competitor to TXU in the context of this case because all of its claims of market manipulation are focused solely on TXU's actions as an electric generation

9

company.  Thus, the court did not err in refusing to apply the exception.

D

Finally, TCE argues that the filed rate doctrine is inapplicable because PURA did not create a "substitute mechanism for the recovery of damages."  It also alleges that the "implication doctrine" warrants reversal and that the application of the filed rate doctrine violates the state constitution. TCE failed to raise these arguments before the district court.  Accordingly, they are waived. *Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004).

IV

For the above stated reasons, we AFFIRM the district court's judgment.

10